BURROWS, Appellant, vs. RUTLEDGE and others, Respondents.

*January 28 — February 25, 1890.*

*Public lands: Annulment of sale for fraud: Action to cancel patent: Who may maintain.*

The commissioners of public lands annulled and set aside a sale of lands on the ground that it had been procured by fraud, and required the purchaser to surrender his patent in conformity to sec. 230, R. S., but he refused to do so. The commissioners resold the land and issued a new patent. *Held,* that the patentee under the second patent might maintain an action in equity for the cancellation of the former patent and to quiet the title.

APPEAL from the Circuit Court for *Price* County.

The substance of the complaint is stated in the opinion. The plaintiff appeals from orders sustaining a demurrer to the complaint interposed by the defendant *Anderson* and a separate demurrer interposed by the defendants *Rutledge, Dirimple,* and *McKinzie.*

*B. J. Stevens*, for the appellant, to the point that the action was properly brought on the equity side of the court, cited *Johnson v. Towsley*, 13 Wall. 72; *French v. Fyan*, 93 U. S. 169; *Ehrhardt v. Hogaboom*, 115 id. 67; *Gough v. Dorsey*, 27 Wis. 119; *State ex rel. Anderson v. Timme*, 70 id. 627; *Sanford v. Sanford*, 13 Pac. Rep. 602; *Turner v. Donnelly*, 12 id. 469; *Wright v. Roseberry*, 121 U. S. 488; *Sparks v. Pierce*, 115 id. 408; *Bohall v. Dilla*, 114 id. 47; *Steel v. Smelting Co.* 106 id. 447; *Smelting Co. v. Kemp*, 104 id. 636; *U. S. v. Schurz*, 102 id. 378; *Moore v. Robbins*, 96 id. 530.

For the respondents *Rutledge, Dirimple*, and *McKinzie* there was a brief by *Jenkins & Jenkins*, and oral argument by *J. J. Jenkins*.

*H. W. Chynoweth*, for the respondent *Anderson*.

Cole, C. J. The plaintiff in this case claims to be the owner of the land in controversy by virtue of a junior patent issued by the school land commissioners. It appears from the complaint that the defendant *Anderson* makes claim to the same land under a prior patent issued to him by such commissioners. The facts stated clearly show that *Anderson* procured his patent through fraud and false affidavits as to the character of the land and of his occupancy and improvements made on the same. It is alleged that the land was not agricultural, or suitable for agricultural purposes, and that *Anderson* knew this fact, but entered it because of its value as pine land, and that it was not subject to pre-emption and entry at the minimum price of $1.25 per acre, under the statute. The statute gives the right of pre-emption to land occupied and improved for agricultural purposes, and plainly contemplates that the person shall reside upon the same, in which case he is permitted to purchase it at the minimum price, on complying with the conditions of the law by making the requisite certificate and

proof of his claim. The law was enacted for the benefit of *bona fide* settlers upon the state land, and it was not intended that land speculators should obtain such lands for the timber upon them at the reduced price. The complaint shows that the tract in question was not agricultural, but was pine land, and was entered for the pine upon it; that *Anderson* well knew its character, and procured his patent from the commissioners by fraud and fraudulent representations as to its character and of his occupancy and improvements. These facts are plainly stated and set forth in the complaint. It also appears that the commissioners, upon learning the real facts, upon notice to *Anderson*, and after inquiry into the truth of the matter, annulled and set aside the sale made to him, and required him to surrender the patent in conformity to sec. 230, R. S., which he refused to do, or to accept the money which he had paid for the land. The land was afterwards sold to the plaintiff, and a patent for the same was issued to him by the commissioners. The object of this action in equity is to have the adverse claims of *Anderson* and the other defendants, who claim some rights under him, declared and adjudged void, and that *Anderson* be required to surrender his patent for cancellation, and that he be forever enjoined from asserting any claim whatever to the land, or to the pine timber growing thereon, adverse to the rights of the plaintiff.

This is a sufficient statement of the facts to show the nature of the action and the relief sought. The plaintiff's counsel says the action is in equity, to quiet title to land; and this statement is doubtless correct. The principal and only objection taken by the demurrer to the complaint is that it fails to state a cause of action. The more specific objection taken is that the facts do not state a cause of action in equity, or show any ground for equitable interference, and that the plaintiff has a complete and adequate remedy at law. It is said, assuming that the plaintiff has the legal

title,— the elder patent being invalid because procured by fraud practiced upon the commissioners,— that the action of ejectment against the defendants in possession will afford a complete remedy.   Consequently, it is insisted the plaintiff has no occasion to invoke the interference of a court of equity to protect his rights.   For the purposes of this case, it will be assumed that the plaintiff might, in an action at law, impeach the validity of the prior patent and show that it was procured by fraud and false swearing as to the character of the land and as to the occupation and improvements made by *Anderson* upon it; but the question raised by the demurrer is, Will not a court of equity, in such case, take jurisdiction and grant the appropriate relief?  In cases of fraud, equity and law often exercise concurrent jurisdiction, says Judge Story, quoting from Mr. Justice Blackstone the remark that courts of equity are established "to detect latent frauds and concealments which the process of the courts of law is not adapted to reach."   Story's Eq. Jur. sec. 59.   There is high authority for the doctrine that a patent cannot be collaterally attacked, but only by a direct proceeding in equity, based on the mistake of the law in its issuance, or fraud and imposition in its procurement. If the officers mistake the law applicable to the facts, and issue a patent to one not entitled to it, especially where they have been imposed upon by fraud and false swearing, the party wronged may resort to a suit in equity to correct the mistake or right the wrong, even if a court of law would have concurrent jurisdiction.   And where fraud is the foundation of the action, and the relief demanded is the cancellation of the patent, it would seem proper to resort to a suit in equity for such relief.   The intimations in the decisions of the supreme court of the United States, where these questions have most frequently arisen, are that in general a court of equity is the more eligible tribunal to decide upon the validity of a patent, and whether it is void.

A number of these cases are cited on the brief of the appellant's counsel. The facts of this case would seem to call for the exercise of equitable jurisdiction, and we think the action should be sustained, to grant the plaintiff such relief as he may be entitled to.

It is said that in *Gunderson v. Cook*, 33 Wis. 551, which was an equitable suit to remove a cloud upon the title and to quiet such title, the court declined to take jurisdiction because the party had an adequate legal remedy. But there was no question of fraud involved in that case, but merely the authority of the commissioners to cancel the plaintiff's certificate and again sell the lands. It was decided that they had no such power, under the circumstances, and that the owner of the certificates might bring his action of ejectment and recover possession, as the plaintiff attempted to do in *Gough v. Dorsey*, 27 Wis. 119. Now, in this case it is apparent, upon the facts alleged, that the commissioners were induced by fraud and imposition and false swearing as to the character of the land and its occupation and cultivation, to grant a patent to *Anderson*. His pre-emption claim was fraudulent, and he knew it. He obtained a patent upon the false representation that it was suitable for agricultural purposes, and that he had made improvements upon it. His conduct in the matter was grossly fraudulent, and the court should not too readily listen to his challenge of the jurisdiction in which his fraud may be exposed and corrected.

There can be no doubt as to the power of the commissioners to set aside the sale made to *Anderson* on account of the fraud practiced upon them. Sec. 230, R. S., provides, in case of the sale of any public lands made by mistake, or not in accordance with law, or obtained by fraud, such sale shall be void, and no certificate of purchase or patent issued thereon shall be of any effect, but the holder of any such certificate or patent shall be required to sur-

Burrows vs. Rutledge and others.

render the same to the commissioners, who shall thereupon order the amount paid for the land to be refunded. This provision gave the commissioners ample authority to set aside the first sale, and to resell the land and issue another patent to the purchaser. The second patent would convey the legal title, on condition that the first patent was canceled; and the object of this action is to annul such patent by judicial decree.

It is further objected that this action will not lie, because, if the patent to *Anderson* is canceled on the ground of fraud, it is said the state is the only party which could bring an action for that purpose, or to whom the court could grant relief. But the state has parted with all of its title in the land to the plaintiff, for a valuable consideration. It annulled the first sale by the action of the commissioners, who had power, under the law, to set it aside, and has granted the land to another. It has thus avoided the sale, and clothed the plaintiff with its power to test the validity of the former proceeding to divest it of title. This, we think, must be the effect of the second sale and the issuing of the second patent under the law. The state did not see fit to file a bill to set aside the first sale, because the law itself gave the commissioners power to do so without such judicial proceedings; and the necessary consequence is that the plaintiff represents, under the law, the state, and may sue for the land or to cancel the patent as fully as it could do. He may assert his own title, that is, the title which he has derived from the state, against one which was fraudulently granted before. It was certainly competent for the state to provide such a way to annul a patent procured in fraud of its rights, and to sell the land to another, vested with all the rights in respect to the land which itself possessed. It will be seen that this is the plain policy of the law; for it is enacted, if a party remains in possession of land after it has become forfeited to the state,

he shall be liable to an action by the state, or any purchaser from the state, for an unlawful detention, with damages for such detention (sec. 235, R. S.), and the patentee acquires the right to all timber, minerals, stone, etc., taken or removed from the land prior to the issue of the patent (sec. 222), and may maintain any proper action for the recovery thereof. These provisions of the law show that the question whether a patent was procured from the commissioners through fraud is not exclusively one between the state and its patentee, but it may be raised by a subsequent patentee, who is clothed, under the law, with the right of the state to inquire into the matter. The state clothes him with full power to attack and avoid a prior patent, on the ground of fraud in procuring it, as fully as itself might do in an action brought for the purpose. This is the effect of ch. 15, R. S.; and this renders the rule laid down in *Crocker v. Bellangee*, 6 Wis. 645, inapplicable. The state did avoid the first sale and patent, and gave the plaintiff authority to test the validity of the former proceeding to divest it of its title.

It follows from these views that the order of the circuit court sustaining the demurrer to the complaint must be reversed, and the case remanded for further proceedings.

*By the Court.*— It is so ordered.