GIBSON, Appellant, vs. GIBSON and wife, Respondents.

*January 11 — April 4, 1899.*

*Administrator's sale of land: His interest in the purchase: Void or void-
. able: Remedies: Ejectment.*

1. A finding of the trial court that an administrator was not interested
directly or indirectly in a sale of the land of his intestate is *held* to
be against the preponderance of the evidence in this case, from
which it appears, among other things, that the land was bid in at
a fair price by the administrator's son, who is not shown to have
had any means to pay for it; that before the sale was completed, in
order to procure the discharge of mortgages then existing on the
land to an amount equaling about three fourths of the purchase
price, the administrator mortgaged his own land and joined with
his son in giving notes secured by mortgage on a part of the land
in question; that within two months after the sale was completed
the son deeded to his father most of the unincumbered part of the
land; and that the explanation of these transactions and the testi-
mony as to how the son paid for the property are vague and unsat-
isfactory.    •

2. Under sec. 3914, Stats. 1898, providing that if an administrator is in-
terested, directly or indirectly, in the purchase of land sold by him
in his official capacity the sale shall be void, such a sale is not ab-
solutely void, but voidable only, and until it is set aside in a proper
action the purchaser has the legal title to the land and the person
entitled to question the sale cannot maintain ejectment. *McCrubb
v. Bray,* 36 Wis. 333, distinguished.

APPEAL from a judgment of the circuit court for Wauke-
sha county: WARHAM PARKS, Circuit Judge. *Affirmed.*

This is an action of ejectment to recover 103.76 acres of
land situated in sections 4 and 5 of the town of Delafield
and sections 32 and 33 of the town of Merton, in Waukesha
county, Wisconsin. The defendants claim title under an
administrators' sale, and the plaintiff contends that the evi-
dence shows that the administrator was directly or indi-
rectly interested in such sale, and hence that it was void.

Trial by jury was waived, and the action was tried by

the court.  The evidence showed that on the 11th of December, 1870, one Pearson Gibson, of Waukesha county, died intestate, owning the lands in suit, with others in the vicinity, and leaving surviving him his widow, Mary Ann Gibson, and the plaintiff, his son, who was then less than two years old and was the only heir at law.  On the 21st of December, 1871, the defendant *Mark Gibson*, a brother of the deceased, and Mary A. Gibson, the widow, and one Joseph Johnson, were duly appointed administrators of the estate of Pearson Gibson, deceased, and thereafter duly qualified.  There were two mortgages which covered the land in question and the other lands of Pearson Gibson at the time of his decease,— one for $1,500 and interest, dated November 27, 1868, to one Matthew Middlewood, and one for $1,000 and interest, dated February 14, 1870, to Joel Hastings.  A considerable amount of claims was proven against the estate, and allowed, in the county court, but the exact amount of the claims so allowed does not appear in the record.  In order to pay said claims and the above mortgages, it became necessary to sell some of the real estate of the deceased; and on the 18th of March, 1872, upon proceedings duly had, the administrators were licensed to sell the real estate involved in this action, for the purpose of paying said mortgages and debts.  After due notice, the land in question was sold April 15, 1872, by the administrators, for $41 per acre, amounting to $4,254.98 in all, to George Gibson, a son of the defendant *Mark Gibson*.  There was some conflict in the testimony as to the value of the lands at the time of the sale, but the court found, upon sufficient testimony, that $41 per acre was its full value.  This sale was confirmed by the county court April 23, 1872, and the administrators were directed to deed the land to the purchaser.  An administrators' deed was made out, bearing date April 30, 1872, but was not acknowledged by the administrators until September 2, 1872, and was recorded Sep-

tember 19, 1872. October 28, 1872, George H. Gibson, the purchaser, deeded to *Mark Gibson*, the defendant, the east 45.12 acres of the land in question, for the expressed consideration of $2,035. George Gibson, the purchaser, died in 1893, intestate and unmarried, leaving the defendants, his father and mother, as his only heirs at-law; and his estate was afterwards duly probated, and the lands owned by him assigned to the defendants.

The records of the county court in the matter of the estate of Pearson Gibson show that the proceeds of the administrators' sale were, in form, accounted for by the administrators and applied to the payment of the debts of the estate, and that upon settlement of the estate a balance of $279.48 was assigned to Louis Gibson, the heir at law, and paid over to his guardian. The records in the office of the register of deeds further show that on the 4th of June, 1872, *Mark Gibson* and wife executed a mortgage to Joel Hastings for $1,000 on that part of the northwest quarter of section 4, town of Delafield, lying south of the Milwaukee & St. Paul Railroad, containing seventy-four acres, and that on the same day Joel Hastings discharged the Pearson Gibson mortgage to him, covering the land in suit. It further appears from said records that on the 2d of September, 1872, George H. Gibson gave a mortgage to Matthew Middlewood for $1,900, covering the land in suit, except the east fifty acres thereof, and that it secured the payment of seven promissory notes for $1,904, executed by *Mark Gibson* and George H. Gibson, and that upon the same day the mortgage from Pearson Gibson to Matthew Middlewood for $1,580 was released by Middlewood. It further appears from the records that on the 9th of December, 1872, the mortgage given by *Mark Gibson* to Hastings June 4, 1872, was released by Hastings, and that upon the same day *Mark Gibson* deeded other lands owned by him to one Vettelson for $2,500.

Practically all of the facts hereinabove stated appear from the records either of the county court or of the office of the register of deeds, and so are not capable of much dispute.

The defendant *Mark Gibson* was put upon the stand as a witness in his own behalf, and testified, as to the transactions under investigation, substantially as follows: That the property in question at the time of the administrator's sale was sold to George H. Gibson and one Peter Christianson in partnership, but that the bid was made by George alone; that the land was put up for sale upon one day, and the sale adjourned until the next day, and that there were other bidders there, but that George's bid was the highest; that he was not interested in his son's purchase; that his son was twenty-eight years old at the time, and had a team of horses and a threshing machine, and that he had made $1,400 threshing with his machine in one season; that George and Christianson worked the property during the season of 1872, George working the west half and Christianson the east half thereof, and that in the fall of 1872 Christianson found that he could not raise the money to complete the purchase, and so he (the witness) took it; that the land was paid for in cash and mortgages; that he received $4,200 from George Gibson in mortgages and other shape; that he (witness) took up the Hastings mortgage by giving a mortgage of his own on the same land; that George paid for that land by turning some money, and some he borrowed, and that Middlewood mortgage; that he never turned any mortgage over to him (witness), but that he paid money enough to pay for the whole land, with the mortgage; that George paid up the debts and the mortgage, and everything, and then he got it on his part; that he paid him (witness) money on the property,— paid up and settled to our satisfaction, and got his deed; that the Hastings mortgage was on the whole property, and that he could not think how that was settled; that

when Christianson failed to take his part of the land and pay for it, and George could not sell it to any one else, he (George) sold it to him; that no one else would give as much for it, and the administrators did not sell it to him (witness); that he simply took the place of Christianson; that at the time of the sale he (witness) was indebted to his son for labor and money loaned, and in October he purchased part of the land from his son, because Christianson gave up the purchase and George could not pay for it all.

Mary Gibson, a daughter of the defendant, was also sworn as a witness, and testified that her brother George and Christianson worked the land during the summer of 1872, and that she heard a conversation between them to the effect that Christianson could not take his share of the land, and that her brother George had run a threshing machine a good many years, and had worked for his father and for other people, and her father owed him for labor, and that he had loaned money to her father during several years, and her father was owing him at the time of the sale. There was other proof on the part of the defendants showing that there were a number of other bidders present at the time of the sale, and that the sale was held open two days, and that George's bid was the best bid received. There was also evidence of one John Christianson substantiating the fact that Peter Christianson was to have a share of the place, under George's bid, and that he attempted to raise the money to take his share of the land.

The circuit court found generally that the lands were sold for full consideration, and the purchase price was duly applied to the payment of the mortgages and debts of the estate; that all the proceedings were regular and the sale fairly made; and that neither of the defendants was directly or indirectly interested in the purchase of the lands. And upon these findings the plaintiff's complaint was dismissed, and the plaintiff appeals.

For the appellant there was a brief by *D. H. Sumner* and *Ryan & Merton,* and oral argument by *T. E. Ryan.*

For the respondents there was a brief by *Carney, Clasen & Walsh,* and oral argument by *E. D. Walsh.*

WINSLOW, J.   In harmony with well-known common-law principles, our statute (Stats. 1898, sec. 3914) has long provided that an executor, administrator, or guardian shall not be *directly or indirectly* interested in the purchase of any real estate sold by him in his official capacity, and that, if he be so interested, the sale shall be void.   The word "void" in this section has been construed to mean "voidable," by this court.   *Melms v. Pabst B. Co.* 93 Wis. 153.   The integrity of this statute has always been jealously maintained by this court.   *McCrubb v. Bray,* 36 Wis. 333; *Martin v. Morris,* 62 Wis. 418; *In re Taylor Orphan Asylum,* 36 Wis. 534.

The question which was litigated in the present case was whether the defendant *Mark Gibson* was directly or indirectly interested in the sale of the land to his son.   Many of the facts are without dispute.   The premises were bid off by George, April 15, 1872, at what seems a fair price, and the sale was confirmed April 23d.   An administrators' deed seems to have been made out, dated April 30th, but evidently it was not then executed or delivered.   George went into possession of part of the land, and one Christianson into possession of the remainder.   The evidence is of the vaguest character as to any payments on the land.   The defendant says that he got money from George every little while, but cannot tell how much; nor is it shown that George had anything to pay with.   Thus matters stood until June 4th, when *Mark Gibson* gave a mortgage on his own lands to Hastings for $1,000, and Hastings discharged the Pearson Gibson mortgage on the lands in suit.   The defendant does not explain this transaction satisfactorily.   He does not state unequivocally that he owed George the money, but this is

evidently the theory of the defense.   Coming down to September 2d, we find the sale still uncompleted, and the Middlewood mortgage, now amounting to $1,900, still unpaid; and upon this day we find that George and *Mark Gibson* give their notes to Middlewood for $1,900, secured by a mortgage on the land in question, *except the east fifty acres* thereof; and on the same day Middlewood discharges the previous mortgage, and the administrator's deed is finally acknowledged, but not placed on record until September 19, 1872. Thus, it stands established that the sale was not finally completed until as late as September 2d, and then it was completed by the giving of the notes of George and *Mark* for almost half of the purchase price, secured by mortgage on the west half of the land.   On the 28th day of the following month, George deeds the east forty-five acres of the land to the defendant.   This situation of affairs seems to us to call for the most clear and convincing explanation.   Having advanced one fourth of the purchase price in securities and become security for nearly one half by his signature to notes, he appears, within two months after the execution of the deed, as the owner of one half of the land.   These suspicious and suggestive circumstances are not satisfactorily explained. We have carefully examined the evidence of the defendant, and find it vague and contradictory, and in some instances absolutely contradictory of the records.   For instance, he denied giving a mortgage to Hastings until after the deed was given to George Gibson, and could not think how the Hastings mortgage was paid, and denied giving any mortgage at all to Hastings to take up the Pearson Gibson mortgage.   His testimony as to how George Gibson paid for the property is unsatisfactory to the last degree.   At one time he says that it was paid in money, then in mortgages and other shapes, but he cannot specify a single payment that George made at any time.   Carefully as we have considered the testimony, we think it entirely fails to show that this

administrator came into possession of nearly one half of his intestate's estate rightfully. The inferences of direct or indirect interest on his part in the transaction which begin with the giving of the Hastings mortgage, June 4, 1872, and end with the deed of half the land to him October 28th in the same year, are too strong and convincing to be overcome by the vague and contradictory general statements which we find in the testimony. Thus, we find ourselves unable to agree with the findings of the circuit judge to the effect that the defendant *Mark* was not directly or indirectly interested in the sale of the land, although we do not think that actual or intentional fraud on his part was proven.

But a difficulty here arises which bars the plaintiff's recovery in ejectment. The principle is familiar that in ejectment the plaintiff must recover on the strength of his own title. As has been previously pointed out in this opinion, it has been held by this court that an administrator's sale of land, in which the administrator is himself interested, is not absolutely void, but voidable only at the election of the persons entitled to avoid it. *Melms v. Pabst B. Co.* 93 Wis. 153. It follows from this that the defendants have legal title to the lands in suit until such title is set aside in some proper action. Until such setting aside of the sale, the plaintiff cannot maintain the purely legal action of ejectment, because, on his own showing, the defendants still have the title. *Yeackel v. Litchfield*, 13 Allen, 417. In harmony with this doctrine, it has been held in this court that where the defendant has the apparent legal title of record, and the facts which make that title inequitable or fraudulent as to the plaintiff are not of record, an equitable action is the proper action in which to obtain an adjudication of the plaintiff's rights. *Prickett v. Muck*, 74 Wis. 199; *Spiess v. Neuberg*, 71 Wis. 279; *Burrows v. Rutledge*, 76 Wis. 22. In such equitable action, if it should appear that there was constructive fraud, only, on the part of the defendants, a court

of equity can and will fix terms upon which the conveyance will be set aside. *Cook v. Berlin W. M. Co.* 56 Wis. 643, and cases there cited; *Yeackel v. Litchfield, supra.* Compare *Hawley v. Tesch,* 88 Wis. 213. We do not see how this can be done in an action at law, even under the betterments statute. We are aware that in *McCrubb v. Bray,* 36 Wis. 333, a recovery in ejectment was sustained in an action brought by the heir against an administrator who had purchased at his own sale; but the point was nowhere raised in the case, and the statute had not then been construed to mean that such a sale was voidable only, so we do not consider the question as settled in that case.

It follows that, although we disagree with the circuit judge as to the question of interest on the part of the administrator in the sale, still the judgment must be affirmed, because the evidence shows that the title to the lands in question is still in the defendants, and must be avoided, if at all, in an action in equity.

*By the Court.*— Judgment affirmed, without prejudice to the right of the plaintiff to bring an equitable action to avoid the defendants' title as indicated in the opinion.

BARDEEN, J., took no part.