STEINBERG and another, Respondents, vs. SALTZMAN and wife, Appellants.

*December 8, 1906—January 8, 1907.*

*Appeal and error: Appealable orders: Action to recover real property: Ejectment or suit in equity? Pleading: Fraud: Matters of public record: Executors and administrators: Appointment: Validity: Collateral attack: Laches: Infants.*

1. An order striking out a demurrer as irregular is not appealable.
2. If a person has the legal title to lands and is entitled to the possession thereof as against another wrongfully withholding the same, and such person's right involves fraud on the part of such other, which right must be established by evidence *aliunde* the record, such person may sue in ejectment for his vindication though he may also sue in equity.
3. In pleading fraud the facts in respect to the matter should be stated.
4. In pleading a matter relating to the existence or nonexistence of a public record the truth of which is readily ascertainable, allegations in respect thereto on information and belief are not sufficient.

5. When a cause for administering the estate of a deceased person exists and application is made therefor to the proper court, neither the circumstance that it is not made by a person entitled to the administration or that a person not so entitled is appointed so far vitiates the proceedings as to render the appointment wholly void; it is voidable, only by some appropriate direct proceeding, not by collateral attack.

6. When a person more than twelve years after arriving at his majority invokes equity jurisdiction for relief from acts which occurred more than twenty-five years prior thereto, his pleading should state some reasonable excuse for the delay

[Syllabus by MARSHALL, J.]

APPEAL from orders of the circuit court for Shawano county: JOHN GOODLAND, Circuit Judge. *One order affirmed; the other appeal dismissed.*

The following shows so much of the complaint as is necessary to be considered:

Carl Steinberg died intestate July 6, 1878, leaving a widow, *Emelie Steinberg,* and three children by a former wife, two being the plaintiffs in this action and the other named Wehilm Steinberg. The latter before the commencement of this action duly transferred his interest in the lands hereinafter described to the plaintiffs and they now own the same. When Carl Steinberg died his son *David* was five years old and his daughter *Martha* was six years old. The widow *Emilie* and the children were the only next of kin and heirs at law of the deceased. He left the north half (N. $\frac{1}{2}$) of the southeast quarter (S. E. $\frac{1}{4}$) of section twenty-two (22), township twenty-seven (27), range thirteen (13) east, in Shawano county, Wisconsin, the northeast quarter (N. E. $\frac{1}{4}$) of the southeast quarter (S. E. $\frac{1}{4}$) being his homestead upon' which the family resided. He also left personal property of the value of about $600 or $700 and debts to the amount of $400 or $500. The value of the estate was about $1,500. Shortly after he died Gottlieb Saltzman presented to the probate court of Shawano county a petition for administration

of the estate, which was the only petition ever filed in the matter, and was in the following words:

"The petition of Gottlieb Saltzman of said county, respectfully represents that Carl Steinberg, late of the town of Seneca, Shawano county, and state of Wisconsin, on the 6th day of July, 1878, at the city of New London, Waupaca county, Wisconsin, died intestate, as your petitioner believes; no last will or testament having been found or being known to exist. That the said deceased left a widow (*Emelie Steinberg*) and three children by a former wife, viz.: Wehilm, aged eight years; *Martha,* aged six years; and *David* of the age of five years, who with said wife constitute the family of said deceased.

"That said deceased left goods, chattels, and personal property within the county and state to the probable amount of five hundred dollars, as your petitioner is informed and believes. That said deceased, as your petitioner is informed and believes, left real estate to the probable amount of eleven hundred dollars. That said deceased left debts due and unpaid to the probable amount of six hundred dollars.

"Your petitioner also represents that he is half-brother to the said deceased Carl Steinberg.

"Your petitioner being desirous that the estate of the said deceased be legally administered, would pray that administration thereof be granted unto Herman Kleman of said town of Seneca, and in the county and state aforesaid, and that appraisers be appointed pursuant to the statutes in such cases made and provided according to the rules and practice of this court.          G. SALTZMAN."

It was verified.

The probate court ordered a hearing on such petition and November 25, 1878, granted the same and the administrator appointed, in form, qualified as such, and thereafter proceeded to sell and dispose of the estate. Plaintiffs allege on information and belief that he disposed of the property for an inadequate consideration and did not attempt to obtain the full value therefor and that defendants received the greater part thereof for a grossly inadequate consideration, the transac-

tion being for the purpose of defrauding the children of the deceased. April 4, 1879, after disposing of the personal property, the administrator made application to the probate court for leave to sell the real estate. The following is the only petition in that regard filed in the matter: (It was verified, but that part we omit.)

"The petition of Herman Kleman respectfully represents, that the total amount of personal estate that has come to his hands as administrator is the sum of one hundred ninety-three dollars. That said amount has been disposed of in paying the expense of administration, the necessary funeral expenses, and part of the debts of said deceased.

"That the debts now outstanding and unpaid against the estate of said deceased amount to about the sum of five hundred dollars, as your petitioner believes.

"That the said deceased died seised of the following described real estate, situate, lying, and being in the county of Shawano and state of Wisconsin, to wit: The north half of the northeast quarter of section twenty-two, township twenty-seven, range thirteen east; eighty acres.

"That it was necessary to sell all of said real estate in order to pay said debts, and your petitioner would therefore pray that a license be to him granted to sell the all of said real estate and he will forever pray.

"Dated at Seneca, the 4th day of April, 1879.

"H. KLEMAN, Administrator."

Plaintiffs allege on information and belief that no license or authority to sell said real estate was granted by the probate court, but that nevertheless the administrator, August 7, 1879, as such, sold and conveyed the same to *August Saltzman* for the expressed consideration of $1,300, but plaintiffs allege on information and belief that no part of such consideration was paid. Before such sale said *Emelie Steinberg* was married to the defendant *August Saltzman*. After the disposal of all of the property aforesaid the administrator filed, in form, an account of his administration in the probate court, showing payment to the widow of the deceased a large

share of the estate after her marriage aforesaid, and a large amount of money paid for purposes and uses unauthorized by law and unwarranted by the circumstances, and a balance in his hands of $350. The said balance has not been paid to the heirs nor have they received any benefit therefrom. The administrator, Gottlieb Saltzman, and others unlawfully and fraudulently conspired with the defendants to cheat and defraud the plaintiffs out of their rightful inheritance, the same being the property aforesaid. The children of the deceased were kept by defendants until they were of age, or nearly so, in ignorance not only of their father's estate, but of all matters in relation thereto, and without education. They were unable to speak English to any extent and were isolated upon the farm and not permitted to mingle with outside people, and great pains were taken to keep them in total ignorance of their father's estate and of their rights. They did not know or have any knowledge or information in regard thereto until June, 1905, when they were informed of the situation and immediately commenced an investigation of the same. The defendants claim title to the land mentioned under the deed aforesaid and are, and for many years have been, in possession of the same and in the enjoyment thereof, to the injury of the plaintiffs, and refuse to surrender their possession to the plaintiffs or to account to them. Plaintiffs pray judgment that the deed aforesaid be declared void; that plaintiffs' title to the land be affirmed; that defendants be barred from any right thereto, and that plaintiffs have such other relief as to the court may seem just.

The defendants demurred to the complaint (1) for defect of parties defendant, (2) for want of jurisdiction of the court of the subject of the action, (3) for misjoinder of causes of action, (4) for insufficiency of facts stated to constitute a cause of action. The demurrer was overruled with leave to the defendants to answer within twenty days upon payment of $10 costs. Within such time the terms were

complied with and a second demurrer was served, stating the same grounds as before with the additional ground that the action was not commenced within the time limited by law; the following sections of the Statutes of 1898 being referred to: Sec. 4221, subd. 4, and secs. 4233, 4251, 4207, 4211, and 3918. Such demurrer on motion was stricken out as frivolous, the order in that regard being as follows:

"It is ordered: That the said second demurrer was irregularly interposed for the reason that a former demurrer covering the same grounds with the exception of setting up the statute of limitations (the question of laches having been fully argued on the argument of the first demurrer), which demurrer was overruled with leave given the defendants to answer within twenty days on payment of ten dollars costs; said second demurrer having been interposed without leave of court although the above-named ten dollars having been paid and retained by plaintiffs' attorney, and he having admitted due and personal service upon said second demurrer, but plaintiffs' attorney offering in open court to repay said ten dollars to defendants' attorneys while arguments were in progress, which defendants' attorneys refused to accept.

"It is further ordered that defendants have twenty days in which to answer without costs.

"Dated this 26th day of June, 1906.

"JOHN GOODLAND, Circuit Judge."

The defendants appeal from both orders.

For the appellants the cause was submitted on the brief of *Eberlein & Eberlein,* and for the respondents on that of *John F. Hooper.*

MARSHALL, J. The order striking out the second demurrer is not appealable, not being specified as such in the appeal statute (sec. 3069, Stats. 1898). That is ruled by *Gianella v. Bigelow,* 92 Wis. 267, 65 N. W. 1030, and *Jacobs v. Beebe,* 95 Wis. 389, 70 N. W. 468.

Appellants' counsel suggest that if the county court failed to obtain jurisdiction to appoint Herman Kleman adminis-

trator, as respondents' counsel contend, then since the complaint shows that appellants are in possession of the property respondents' remedy is by an action in ejectment.    The answer to that is that where a person claims the legal title to land and right of possession as against another, unjustly withholding the same, if such person in order to prove his title must resort to evidence *aliunde* the record, and facts showing fraud on the part of his adversary, he may sue in equity, though he might, if he choose, sue at law.    *Burrows v. Rutledge,* 76 Wis. 22, 44 N. W. 847; *Swihart v. Harless,* 93 Wis. 211, 67 N. W. 413; *Gibson v. Gibson,* 102 Wis. 501, 78 N. W. 917.

The further claim is made that the allegations of the complaint on the question of fraud are mere general statements; not complying with the rule that the facts claimed to constitute the fraud, not mere conclusions, must be pleaded. *Riley v. Riley,* 34 Wis. 372; *Crowley v. Hicks,* 98 Wis. 566, 74 N. W. 348.    That claim does not appear to be well taken to the extent of rendering the pleading open to attack for insufficiency.    It states facts showing that a person, not entitled as matter of right to administration, was appointed to the trust; that he disposed of the personal property of the estate for an inadequate consideration, most of it going to the appellants; that the real estate including the homestead, which was not liable to sale for the payment of debts, was sold for that purpose without any license authorizing the same; that such acts and others mentioned were done in consummation of a conspiracy between the administrator, the person who petitioned for his appointment, and the appellants to cheat respondents out of their property, and that appellants concealed the facts of the matter from respondents for many years and during their minority by isolating them on a farm, bringing them up in ignorance and preventing them from associating with outside people.    Whether the allegation on information and belief that no license to sell

the real estate was obtained is sufficient under *Union L. Co. v. Chippewa Co.* 47 Wis. 245, 2 N. W. 281, to raise that question because it appertains to matters of public record is not controlling in face of the other allegations. On the whole, though some of the allegations of the complaint on the subject of fraud are quite general, it seems that facts in respect to the matter are sufficiently pleaded to save the pleading from the charge of insufficiency.

It is contended by respondents that the petition for administration was fatally defective because not made by a person entitled to administration, and that the order of appointment is void because the person named as administrator was not entitled thereto, so far as appears by the petition, under sec. 3807, Stats. 1898. The rule in Michigan under a statute similar to ours is as counsel contend. However, this court has never given countenance thereto. It was held in *Brunson v. Burnett*, 2 Pin. 185, that the appointment of a person as administrator, not entitled thereto by law, "was, in the highest degree, irregular, though not perhaps entirely void." That decision has stood without criticism for over fifty years. The suggestion that such an appointment is probably erroneous only, has doubtless been relied upon time and again since the decision was made, till it has come to be understood that mere failure to state in the petition for administration all facts requisite to entitle the person named as administrator to the appointment, sufficient being shown to indicate that a cause for administration exists and that the application is in the proper jurisdiction, or failure to appoint as administrator a person designated by the statutes, is not such a defect as to render the administration proceedings initiated by the petition wholly void. That is supported by *Taylor v. Hosick*, 13 Kan. 518, where letters of administration were issued to a person not a relative, contrary to the statute, and *Kelly v. West*, 80 N. Y. 139; *Maybin v. Knighton*, 67 Ga. 103; *Barclay v. Kimsey*, 72 Ga. 725; *Emerson*

*v. Ross's Ex'x,* 17 Fla. 122; *Martin v. Robinson,* 67 Tex. 368, 3 S. W. 550; *Varnell v. Loague,* 9 Lea, 158; *Moreland v. Lawrence,* 23 Minn. 84; *Pick v. Strong,* 26 Minn. 303, 3 N. W. 697; *Emery v. Hildreth,* 2 Gray, 228; *Mut. Ben. L. Ins. Co. v. Tisdale,* 91 U. S. 238.

Our latest decisions touching the subject are in harmony with *Brunson v. Burnett* and the cases cited. In *Welsh v. Manwaring,* 120 Wis. 377, 98 N. W. 214, failure to appoint as administrator one competent therefor by statute was treated as judicial error, and in *Perkins v. Owen,* 123 Wis. 238, 101 N. W. 415, the appointment of an administrator where it turned out later that no such appointment was necessary because of there being a will was likewise treated. The same principle was approved in *Jordan v. C. & N. W. R. Co.* 125 Wis. 581, 104 N. W. 803, where the following language of MARSHALL, C. J., in *Griffith v. Frazier,* 8 Cranch, 9, 23, was cited with approval:

"In the common case of intestacy it is clear that letters of administration must be granted to some person by the ordinary [having the power of our county court], and, though they should be granted to one not entitled by law, still the act is binding until annulled by the competent authority, because he had power to grant letters of administration in the case."

In *Pick v. Strong, supra,* the court passed upon the identical question we have here in this decisive language:

"The letters of administration were introduced on the trial. They were, in this action, conclusive of the regularity of the proceedings resulting in their issuance. That they were issued to one not entitled to them, or upon the application of one who had no right to make such application, is an objection which could be made only on appeal from the order granting them, or, if such application could be made, upon an application to the probate court to vacate them. They cannot be attacked for such reasons in a collateral proceeding."

The only case of any significance to the contrary of the foregoing except those decided by the supreme court of Michigan, so far as we can discover, is *Underwood v. Underwood's Adm'r,* 111 Ky. 966, 65 S. W. 130. The opinion of the court there is very brief and without supporting authorities. There is a very able dissenting opinion wherein *Brunson v. Burnett,* 2 Pin. 185, is given first place in support of the principle maintained. The learned judge gave expression to his views thus:

"No authority is cited by the court to sustain the conclusion it reaches, which is in conflict with all the authorities that I have been able to find. If the order of the county court in this case is void, then the sureties of the public administrator were not responsible for his acts in administering the estate, and sales by him passed no title, for if the order was void he stood as if he had taken charge of the estate without any order of court; and much graver consequences may, it seems to me, result from the rule laid down by the court than from that which the lawmaking branch of the government has seen proper to prescribe. . . . In all the states or nearly all, provision is made for administration by a public officer, and nowhere, so far as I have been able to find, has departure by the probate court from the directions of the statute been held to make its order void."

And also this:

"The universal current of authority is that in such matters the judgments of the county courts cannot be attacked collaterally unless the person upon whose estate administration is granted was not in fact dead or did not reside in the county."

The allegations of the complaint on information and belief challenging the validity of appellants' title upon the ground that no license to sell the realty was granted, it is insisted, are not sufficient to raise such question. That seems to be ruled in appellants' favor by *Union L. Co. v. Chippewa Co.* 47 Wis. 245, 2 N. W. 281; *State v. McGarry,* 21 Wis. 496; *Mills v. Jefferson,* 20 Wis. 50. Respondents could easily have ascertained whether there was a record of any license to sell the

realty, and, if there was none, have alleged the fact positively. That would have been warranted.

Counsel for appellants further contend that the allegation of the complaint that part of the realty was not liable for the payment of debts because of its being a homestead, which upon the facts stated under the statute descended to respondents free from the claims of creditors, is immaterial, since sec. 3884, Stats. 1898, existed at the time of the sale and authorized a sale of the homestead with other lands if the whole was incumbered by a mortgage, and that it should be presumed that such condition existed, since it is not negatived by the complaint. If any such negative was required it seems that the copy of the petition for the sale, which was made a part of the complaint and shows no special circumstances satisfying the statute referred to, is sufficient. As the respondents' case stands on the complaint the whole legal title to the homestead was in them from the time of the second marriage of their stepmother, free from any right of interference by the administrator, and the sale of it for the purposes stated in the petition was without authority of law and void. It was expressly exempted from such sale by sec. 3874, Stats. 1898, which existed at the time of the proceedings in question. So the alleged sale did not pass any title to the property. Here there was no adjudication, so far as appears, either that the lands did not include a homestead or that facts existed permitting a sale of the homestead. There was a petition to sell the lands as if no question of homestead was involved, and the sale presumably was made accordingly. Of course, under such circumstances a purchaser could obtain no better title than he would to land bought by him at an administrator's sale which did not belong to the intestate at the time of his decease.

The only remaining question presented that need be considered, since the second demurrer cannot be regarded as before us, is: Does the complaint as matter of law show fatal

laches on the part of respondents? Appellants' counsel earn-estly insist that such is the case, in that it appears that some twelve years elapsed after respondents attained their majority before the action was commenced, during which time the rec-ords of the county court would have informed them of suffi-cient facts to at least have moved them, as persons of ordinary prudence, to make such an investigation as would have led to a discovery of all the circumstances pleaded, and that the complaint does not state facts excusing the long delay. *Rog-ers v. Van Nortwick*, 87 Wis. 414, 58 N. W. 757, and similar authorities are referred to.

That case does not seem to control because it went upon the theory that plaintiff had actual knowledge of such facts as if acted upon with reasonable diligence would have led to a full discovery. Other cases cited, and many others that might be referred to, turned upon the same theory. In the *Van Nort-wick Case* plaintiff's knowledge of suggestive facts was estab-lished upon the trial. Here the complaint states that re-spondents did not discover the condition of things detailed till shortly before the action was commenced, and in June, 1905. There is no fact or facts disclosed which necessarily suggest that respondents are chargeable with having earlier obtained knowledge sufficient to put them upon inquiry. What may be shown on a trial by way of defense, and to what extent respondents may fail to establish the conditions pleaded excusing their delay, are far different questions.

The complaint states in substance as an excuse for the late discovery, as substantially before indicated, that when re-spondents' father died they were too young to appreciate their rights; that they were brought up in ignorance by the defend-ants, kept isolated on the farm for many years after the death of the father and prevented from mingling with outside peo-ple, great pains being taken in that regard, all for the pur-pose of guarding against their discovering the facts as to their rights. It would not be unreasonable for persons so treated

from early childhood, when they would not be expected to appreciate their position, till their majority, not to suspect their relation to property treated as it is alleged the property in question was, or to inspect public records in respect thereto, till by accident or good fortune some fact or facts came to their notice putting them upon inquiry.

True, as claimed, where laches is in issue the plaintiff is chargeable with such notice as he might have obtained by investigation, provided the facts already known to him were such as to put a man of ordinary prudence on inquiry, which if pursued would bring home to him the real situation (*Rogers v. Van Nortwick, supra; Melms v. Pabst B. Co.* 93 Wis. 140, 66 N. W. 244), and a complaint in a case of this sort should show the particular wrongful acts, when they were perpetrated, and if so long before action as to suggest laches, when the discovery was made and what the discovery was. But that under our liberal rules of pleading is satisfied if the facts expressly and inferentially pleaded fairly cover the subject. Here sufficient was stated to constitute a fraudulent and illegal appropriation or disposition of respondents' property, and the statement that they did not have any knowledge of the facts until June, 1905, when they were informed of the situation and immediately commenced an investigation, inferentially pleaded that in June, 1905, they for the first time obtained information in respect to their being the real owners of the real estate in question, and the manner in which they had been deprived of their property, as alleged.

We will not pursue this subject further or attempt to discuss the cases cited, and the many judicial authorities at hand, showing that our decision is fully justified thereby. Such a treatment of the case would require a very long opinion without serving any valuable purpose. Every case of this sort must stand or fall on its own peculiar facts. That which constitutes fatal laches under some circumstances will not under others. It is one thing to condemn an alleged cause of

action for laches on the evidence produced, and quite another to condemn a complaint as insufficient on the ground of laches disclosed thereby. In the latter situation all facts are presumed to exist which are reasonably inferable from those pleaded and laches is not presumed. In the former such facts only are recognized as are established by evidence to a reasonable certainty. It may be, as before indicated, that fatal laches can be shown by the evidence upon the trial of this case and that respondents cannot make out a case showing themselves not guilty of such laches, but the allegations of the complaint are full enough to show a probable ground for relief.

Thus it is considered that the complaint shows a cause of action for recovery of the whole land in question because of its having been obtained by fraud, and especially to recover the homestead forty because it was sold without authority of law.

*By the Court.*—The appeal from the order striking out the second demurrer is dismissed, and the order overruling the first demurrer is affirmed.