ALLEN, Appellant, vs. ELLIS and others, Respondents.

*September 13—October 3, 1905.*

*Cloud on title: Judgments: Privity:* Res adjudicata: *Witnesses: Ex-*
*amination: Inconsistent statements: Appeal: Findings when*
*disturbed: Evidence: Vendor and purchaser: Adverse posses-*
*sion: Appeal.*

1. The facts, stated in the opinion, are *held* sufficient to constitute
   a cause of action in equity to remove a cloud upon the title to
   premises plaintiff claimed to own.
2. The assignee of the original judgment, for the satisfaction of
   which a garnishment action was prosecuted, and in which gar-
   nishment action the assignee was not a party, did not appear,
   and was not, but the original judgment creditor was, benefi-
   cially interested, is a stranger to the garnishment action.
3. In such case the assignee, although he obtained the judgment
   from the plaintiff in both the original and garnishment actions,
   is not bound as a privy by a finding in the garnishment action.
4. In such case, since the parties were not the same and the decis-
   ion in the garnishment action would not be conclusive against
   such assignee, it is not conclusive in his favor, and the doctrine
   of *res adjudicata* does not apply.
5. Where there are some discrepancies in a witness's testimony
   given upon various examinations in different actions, but of
   slight importance, and explained by the witness as mistakes in
   recollection, resulting from the lapse of time and the complica-
   tions arising out of the different transactions involved in the
   litigation, the trial court is not thereby justified in disregarding
   his evidence in the cause on trial.
6. On an issue as to whether the relation of mortgagor and mort-
   gagee existed, the findings of the trial court cannot be disturbed
   where, under the evidence, stated in the opinion, the court had
   good ground to conclude that that relation did not exist.
7. The trial court's conclusion that, by a contract to convey all of
   vendor's property with certain specified exceptions, lands in
   dispute, though not specified, were excepted, is *held* supported
   by the evidence.
8. A father went into possession of land with the consent of his son
   under an agreement to occupy and cultivate for his own benefit,
   and with the further agreement that the title should be in the
   son.   Such possession and use continued under such arrange-
   ment up to the time of the father's death, a period of twenty-
   seven years, with nothing to indicate that there was any change

in the character of the father's possession. *Held*, that the facts necessary to show hostile possession by the father did not appear.

9. Questions not covered by the findings and judgment, not considered upon the trial, and concerning which no requests for findings were presented to the lower court nor covered by exceptions preserved in the record, will not be considered on appeal.

APPEAL from a judgment of the circuit court for Eau Claire county: E. W. HELMS, Judge. *Affirmed.*

This is an action wherein the plaintiff asks the judgment of the court declaring that he is the owner in fee of the premises described in the complaint and that defendants be declared to have no estate or interest therein; that the mortgage appearing of record on the premises be ordered satisfied, and that an accounting be had between plaintiff and defendants as to the rents, issues, and profits of the premises and for injuries done by defendants to plaintiff's estate in the lands; and that plaintiff have judgment for whatever sum may be found due him and for the possession of the premises. The defendants deny that the plaintiff has any right, title, or interest in the premises, and claim that the title to the land is in the defendant *J. F. Ellis,* and aver that plaintiff is not entitled to an accounting as prayed for, and that plaintiff's claim that he is owner in fee of the lands is without foundation and fraudulent; and they demand that plaintiff's complaint be dismissed, and upon their counterclaim they demand judgment that plaintiff's deeds and those of his immediate grantors under the execution sale on judgment against H. C. Ellis as judgment debtor be held void, and that said judgment, which was assigned to this plaintiff and for which execution issued, be ordered satisfied of record as fully paid and discharged. It is also averred that H. C. Ellis is dead.

The material facts, as appears from the undisputed testimony and the findings of the court, are as follows: On May 24, 1876, Frederick A. Moore, who at that time was the owner in fee simple of the lands described in the complaint, con-

veyed them to the defendant *J. F. Ellis.* The deal with Moore was made by H. C. Ellis, father of the defendants, and, upon delivery of the deed to *J. F. Ellis,* H. C. Ellis went into immediate possession, improved and managed the lands as part of his farm, and treated the premises in all respects as his property. He also, either directly or indirectly, paid the purchase price of the lands to Moore. There was no agreement between *J. F. Ellis* and H. C. Ellis that *J. F. Ellis* should hold the title as security for an obligation running from H. C. Ellis to him and that he should convey to H. C. Ellis upon payment by H. C. Ellis of the purchase price of the lands.

"(4) That prior to June 23, 1886, a judgment had been rendered in the circuit court for Trempealeau county in favor of Geo. W. Whereatt against the defendant *J. F. Ellis* for $2,938.10 on a default, and that on said June 28, 1886, the defendant *J. F. Ellis* gave an appeal bond upon appeal from said judgment to the supreme court, conditioned to pay said judgment, if said judgment should be confirmed in said last-named court, which said bond was signed by Chas. L. Allen, John J. Worth, and Hurando C. Ellis as sureties, the latter being the individual mentioned throughout these findings as H. C. Ellis; that upon said appeal the said judgment was affirmed, but subsequently, upon application to the circuit court, the said defendant was allowed to open the case and file an answer in said action and defend the same, but in said order opening the case and allowing answer it was provided that said judgment stand as security for any judgment subsequently obtained upon the trial of the issues raised by said answer.

"(5) That thereafter, and upon the trial of the issues in the action mentioned in finding 4 upon its merits, judgment was rendered in favor of the plaintiff Whereatt and against defendant *J. F. Ellis* on August 25, 1895, for $1,940.35.

"(6) That thereafter suit was begun on the bond mentioned in finding 4, and on June 12, 1899, judgment was rendered therein in favor of said Whereatt against John J. Worth and H. C. Ellis for the sum of $1,726.42 damages and $45.20 costs, amounting in all to $1,771.62.

"(7) That on July 12, 1899, said last-mentioned judgment was docketed in the circuit court of Eau Claire county, and on July 20, 1899, the same was docketed in circuit court of Dunn county.

"(8) That on April 16, 1901, the sheriff of Eau Claire county sold the lands in Eau Claire county described in the complaint on an execution issued upon the judgment mentioned in finding 6, and on April 11th the sheriff of Dunn county sold the lands lying in Dunn county described in the complaint on an execution issued in said last-mentioned judgment; that in both instances the lands were sold to one R. K. Boyd.

"(9) That on July 23, 1902, the sheriff of Eau Claire county issued to said R. K. Boyd a sheriff's deed of lands mentioned in the complaint as lying in Eau Claire county, and on July 21, 1902, the sheriff of Dunn county issued to said R. K. Boyd a sheriff's deed of the lands mentioned in the complaint as lying in Dunn county, both of said deeds being issued upon said sales aforesaid.

"(10) That on August 17, 1903, the said R. K. Boyd by quitclaim deeds conveyed the lands mentioned in the complaint to *E. W. Allen,* the plaintiff herein.

"(11) That on the 17th day of August, 1903, the Southwestern Land Company, a corporation, by quitclaim deeds conveyed to said plaintiff herein the lands described in the complaint."

On September 1, 1893, *J. F. Ellis* by written offer agreed to sell, assign, and convey to the Southwestern Land Company all of his property, with certain specific exceptions, in consideration of the company assuming and agreeing to pay certain specific obligations. The offer contained no specific description of the property covered by it. This offer was duly accepted by the company. The lands in dispute were not specified as excepted, but neither *J. F. Ellis* nor the land company has considered this land as covered by this contract. On June 28, 1886, *J. F. Ellis,* H. C. Ellis, John J. Worth, and Charles L. Allen signed an undertaking for *J. F. Ellis* on appeal to the supreme court from a judgment rendered in favor of

George W. Whereatt.   The judgment had been rendered on default, and *J. F. Ellis* was afterward permitted to defend on the merits; the judgment being allowed to stand as security.   Judgment was again rendered in favor of Whereatt. Whereatt sued to recover on the undertaking given on the appeal from the first judgment, and recovered judgment therein for $1,771.62, June 12, 1899, against H. C. Ellis and John J. Worth.   Charles L. Allen successfully defended under the statute of limitations, and no judgment was rendered against *J. F. Ellis,* because he had been discharged in insolvency proceedings from the payment of his debts.   Whereatt thereafter commenced a garnishee action against the Southwestern Land Company and *J. F. Ellis,* as garnishees of H. C. Ellis, to apply the property of H. C. Ellis to the satisfaction of the judgment for $1,771.62 obtained June 12, 1899, against H. C. Ellis and John J. Worth.   This action was commenced before Whereatt transferred his judgments to *E. W. Allen,* the plaintiff, but was decided afterward.   Whereatt sought to recover from *J. F. Ellis,* as garnishee of H. C. Ellis, the real estate in controversy in the present suit; but the court found that he was not liable as such garnishee, as he had no property under his control or in his possession belonging to H. C. Ellis.   *J. F. Ellis* appealed to the supreme court from the second judgment in favor of Whereatt, and *Samuel Ellis* and Peter Hanson signed the appeal bond. After an affirmance of this judgment Whereatt brought suit against *Samuel Ellis* and Peter Hanson on this bond, and recovered judgment against them for $1,228 on September 26, 1898.   The Southwestern Land Company, which had agreed with *J. F. Ellis* to protect these bondsmen, defended the action for them.   On July 19, 1899, Whereatt assigned his judgments to the plaintiff, *E. W. Allen.*

The court found as conclusions of law that plaintiff acquired no title under the quitclaim deed from R. K. Boyd, and that he acquired no title under the quitclaim deed from

the Southwestern Land Company, because the lands in controversy were not included in the contract between *J. F. Ellis* and the land company. The court accordingly awarded judgment dismissing the complaint.

For the appellant there was a brief by *Wickham & Farr,* and oral argument by *James Wickham.*

*W. F. Bailey,* for the respondents.

SIEBECKER, J. The plaintiff brings this action, demanding that the title acquired by him to the lands in question be confirmed, that he be declared the owner in fee, and that it be decreed that the defendants have no interest in the lands, and that they be barred from exercising the rights of ownership and possession which they assert and seek to maintain. The facts alleged by the plaintiff are sufficient to constitute a cause of action in the nature of a suit in equity to remove the cloud upon the title which he claims to own, and which, if found valid, makes him the owner in fee of the lands and gives him the right to the possession thereof. As stated in *Pier v. Fond du Lac,* 38 Wis. 470:

"The remedies given in such action are broad and ample. To give effectual relief the court will decree the reformation, surrender, or cancellation of deeds and other instruments affecting the title, or the reformation or cancellation of records and the execution of deeds and releases. In short, it possesses power to decree adequate relief and to enforce full execution of its judgment."

Other cases holding that such a bill may be maintained are collected in *Kruczinski v. Neuendorf,* 99 Wis. 264, 74 N. W. 974.

R. K. Boyd, as purchaser at an execution sale in April, 1901, under a judgment against H. C. Ellis, secured a sheriff's deed of the premises in July, 1902. A quitclaim deed of the interest thereby acquired was made by R. K. Boyd and wife to this plaintiff on August 17, 1903. On the trial of the issues the court found that plaintiff had acquired no title or

interest in the lands under this conveyance from R. K. Boyd.
The conclusion of the court is based on the ground that,
though H. C. Ellis paid the consideration for the lands when
they were purchased from Moore, the title thereto was taken
in the name of *J. F. Ellis,* his son, and was so held from the
date of purchase to the commencement of this action. Ex-
ception is urged to this conclusion of the court on the ground
that the finding is against the clear preponderance of the evi-
dence, and upon the further ground that the plaintiff stands
in privity with the judgment creditor in the action wherein
the sheriff's deed issued on execution sale, and that the same
question was litigated between such judgment creditor and the
defendants in a garnishment action wherein the property was
sought to be reached in satisfaction of the original judgment
which plaintiff had purchased, and therefore such finding is
*res adjudicata* in this action between plaintiff and the defend-
ant *J. F. Ellis.* It appears that plaintiff is the purchaser of
the judgment in the case of Whereatt v. H. C. Ellis et al.,
and that Whereatt commenced an action against the South-
western Land Company and *J. F. Ellis* as garnishee defend-
ants for the purpose of reaching any property in the hands of
the garnishees and of applying it in satisfaction of the judg-
ment in the original action of which the plaintiff is the as-
signee. The present plaintiff was not a party to, nor did he
appear in or have any control over, the proceedings in the
garnishment action. The garnishment action went to judg-
ment upon trial, and the court held that *J. F. Ellis* was not
liable as garnishee, and dismissed the action as against him.
The court found as a fact in the garnishment action that the
title to the land involved in the present suit was conveyed to
*J. F. Ellis* under an agreement between him and his father,
H. C. Ellis, "that, upon payment by the latter of the sum
which *J. F. Ellis* had paid for the land, the said lands should
then upon demand be conveyed by the said *J. F. Ellis* to the
said H. C. Ellis." It is claimed that the determination of

this question in the garnishment action is binding upon the parties to the present action, because the present plaintiff, *Edward W. Allen,* was the assignee of the original judgment, for the satisfaction of which the garnishment action was prosecuted by the plaintiff therein. There is nothing to show that the plaintiff was beneficially interested in the prosecution of the garnishment action. So far as it appears, that proceeding was wholly in the interest of and for the benefit of the original judgment creditor. This situation leaves the plaintiff in this case a stranger to the garnishment action.

But it is claimed that, since he obtained that judgment by purchase from Wheteatt, who was plaintiff in both the original and the garnishment actions, he is bound by such finding in the garnishment action as a privy. This claim we do not consider well founded. To constitute privity as here asserted it must appear that there was a mutual or successive relationship to the right of property affected by the judgment which was assigned to this plaintiff.

"It is only when the particular property or right which has been transferred has been affirmatively shown to have been the subject matter of the former litigation, and its status settled thereby, that the effect of the litigation is conclusive upon a grantee or transferee of the property." *Grunert v. Spalding,* 104 Wis. 193, 225, 80 N. W. 589, 590.

"In the doctrine of *res adjudicata,* privity extends no farther than the particular subject matter or property, the status of which was determined by the judgment as to that particular thing. . . . The mere personal effect of the judgment, however, is absolutely confined to the parties to the litigation. It does not attach to and become a rule of property as to any other thing than the particular subject of the controversy, which was closed by the judgment." *Hart v. Moulton,* 104 Wis. 349, 354, 80 N. W. 599, 600.

The plaintiff in the instant case, as assignee of the judgment in the original action, became successively related to the rights of property which were determined by the judgment so assigned to him. The questions involved and litigated in

the garnishment action are independent of, and are not included in and covered by, the judgment in the original action. The matters concluded therein are confined to the parties to that litigation, and the mere personal effect of such judgment, which estops the parties as to the matters embraced therein, does not pass with the transfer of the original judgment, though the party plaintiff was identical in both actions. Since the parties are not the same, and since the decision in the garnishment action would not be conclusive against this plaintiff, it follows that it is not conclusive in his favor, and the doctrine of *res adjudicata* does not apply. *Grunert v. Spalding, supra; Hart v. Moulton, supra; Hunt v. Haven,* 52 N. H. 162; *McDonald v. Gregory,* 41 Iowa, 513; *Burlen v. Shannon,* 3 Gray, 387; 1 Herman, Estoppel and Res Adjudicata, § 135; *Shipman v. Rollins,* 98 N. Y. 311; *Lenz v. C. & N. W. R. Co.* 111 Wis. 198, 86 N. W. 607.

Appellant directs our attention to the testimony bearing on the finding of fact that the relationship of mortgagor and mortgagee did not exist between the defendant *J. F. Ellis* and his father as to the lands in controversy, and asserts that there is such a conflict in the evidence of *J. F. Ellis* in his action and his evidence in other actions on this question as to make his evidence in this case incredible. An examination of the evidence does not warrant such an inference. True, there are some discrepancies in his evidence given upon the various examinations in the different actions. They are, however, of slight importance, and were explained by the witness as mistakes in recollection, resulting from the lapse of time and the complications arising out of the different transactions involved in the litigation. The trial court would not have been justified in disregarding his evidence in the case. Taking it into consideration with the other evidence in the case, the court had good ground to conclude that the relationship of mortgagor and mortgagee did not exist, and its finding on this subject cannot be disturbed.

Appellant also claims that the respondent *J. F. Ellis* con-
veyed whatever interest he had in the lands in controversy to
the Southwestern Land Company by the contract of Septem-
ber 1, 1893, and that this land company conveyed such inter-
est to him by the quitclaim deed of August 17, 1903. The
court found that the parties to that contract did not in fact
intend to include the lands in question in this contract, and
that they were not conveyed under it. There is hardly room
for argument upon this question, in the light of the undis-
puted facts that the land was held, occupied, and used by
H. C. Ellis throughout the ten years after the making of the
contract and the commencement of this action without a claim
of ownership by the land company; that no transfer by deed
was made or called for under this contract, and the fact, ad-
mitted by Charles L. Allen, who was the sale manager and
active agent of the land company, and who acted for it in the
negotiations resulting in this contract, that he did not consider
this land to be the property of *J. F. Ellis* when the contract
was made. The facts established by the evidence abundantly
support the conclusion of the court on this question.

It is contended that, if it be held that the title to this land
is in *J. F. Ellis* as grantee in fee under the deed from Moore,
then H. C. Ellis, his father, has acquired such title by ad-
verse possession of the land. The father's uninterrupted pos-
session and use of the lands for the period of twenty-seven
years is admitted. The evidence also shows that he went into
possession with the consent of his son and under an agreement
to occupy and cultivate the farm for his own benefit, and
with the further agreement that the title should be in the son.
This possession and use continued under this arrangement
up to the time of his death. Nothing indicates that there
was any change in the character of the father's possession.
The facts necessary to show a hostile possession do not appear.
In so far as the proof characterizes the possession, it is to the
effect that the father held and occupied the land under the

legal proprietor, and that he never claimed or asserted occupancy or possession other than in subordination and subservience to the legal title. No grounds are established upon which a claim of adverse possession by the father can be based.

Respondent presented arguments upon a number of questions not covered by the court's findings and judgment. It does not appear that they were considered upon the trial; there were no requests presented to the lower court to find on them, nor are they covered by any exceptions preserved in the record. Under these circumstances we do not feel called upon to consider these questions on this appeal.

*By the Court.*—The judgment is affirmed.