SURING, Respondent, vs. ROLLMAN and another, imp., Appellants.

*February 22—March 14, 1911.*

*Boundaries: Location of quarter-section corner: Quieting title: Cloud: Plats: Actual location on other land: Claim of title: Pleading: Joinder of causes and parties: Appeal: Harmless error: Equity: Inadequate remedy at law: Cancellation of instruments.*

1. Evidence of early landmarks, blazed lines, and bearing trees now destroyed is *held* to sustain the location of a quarter-section corner in accordance therewith, and not as a lost corner, although the quarter-post itself had disappeared and such location resulted in throwing into the west half of the section nearly the whole of an overrun or surplus of about five chains in the south line of the section.

2. Where plaintiff owned lands adjoining a certain quarter-section line on the west, and defendants made and recorded a plat of lands purporting to adjoin the same line on the east, but in fact, owing to a dispute as to the true location of the quarter-section corner, the plat as located and staked out on the ground encroached upon plaintiff's land, and defendants were claiming

title to the strip in question and were selling parts of it to others, an action would lie under sec. 3186, Stats. (1898), to remove a cloud from plaintiff's title, if such disputed strip was either in his actual possession or vacant.

3. Even if there was a misjoinder of causes of action in a complaint *quia timet* against one defendant not in possession and another in possession of a part only of the land in dispute, the error in overruling a demurrer on that ground will not, under sec. 3072*m*, Stats. (Laws of 1909, ch. 192), be cause for reversal after a trial on the merits, unless some substantial right of the appealing defendants has been affected thereby.

4. Under the circumstances above stated there is a good cause of action in equity, independent of sec. 3186, Stats. (1898), to remove the cloud upon plaintiff's title caused by the recording of defendant's plat. Though such plat purports to cover only land east of plaintiff's line, yet its effect as a claim of title, when construed in connection with its accompanying survey, extends to the corners and boundary lines actually established and marked on the ground.

5. In such case the plat, being an entirety, can and should be attacked as a whole, and all persons interested in the result of the attack should be made parties, even though their claims be several.

6. The remedy at law in such a case is not adequate, since the only real and effective relief would be the cancellation of that part of the plat actually located upon the plaintiff's land and of the conveyances of lots according to the plat so far as they affect such land.

7. The common-law action *quia timet* may be brought when plaintiff is out of possession and defendant in possession in a case where defendant has apparent title, the invalidity of which can only be shown by evidence *aliunde* the record; and the remedy is not confined to cases of fraud but extends to cases where, in order to give effectual relief, there must be reformation, cancellation, or surrender of deeds, conveyances, or records affecting the title.

APPEAL from a judgment of the circuit court for Oconto county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

This is an action in equity to remove alleged clouds upon the plaintiff's title to land, and from judgment in plaintiff's favor the defendants *Rollman* and *Johnson* appeal.

The plaintiff is the owner of lot 4 in section 12, town 29

north, of range 17 east, in Oconto county, Wisconsin.    This
lot is the fractional southeast quarter of the southwest quarter
of the section.    The defendants *Rollman* and *Johnson* are
partners and own the southwest quarter of the southeast quar-
ter of the same section immediately adjoining plaintiff's land
on the east, except three small village lots owned respectively
by the defendants School District No. 3, the M. E. Church of
the village of Suring, and Julius Jasperson.    The parcels
owned by the three last named defendants are lots in a plat
of part of the southwest quarter of the southeast quarter,
made and recorded by the defendants *Rollman* and *Johnson*
some years since, and said defendants obtained their title
from *Rollman* and *Johnson* before the commencement of this
action.    Certain mortgagees of said last named lots are also
made defendants.    The difficulty arises from a disagreement
as to the location of the quarter-post on the section line be-
tween sections 12 and 13.    As matter of fact there is an
overrun or surplus of about five chains in the line between the
southeast and southwest corners of section 12, both of which
corners are well established.    The plaintiff's claim is that the
original quarter-post on this line was so located that the east
half of the section was nearly correct and nearly all the sur-
plus thrown into the west half of the section.    While the
original stake set by the government surveyors in 1855 is not
in existence, the plaintiff claims it has been preserved by
landmarks, fences, buildings, and the memories of witnesses,
so that it is not a lost corner.    On the other hand, the defend-
ants claim that it was in fact a lost corner.    In 1897, in the
course of some resurveys in section 13, it became necessary to
find the quarter-post aforesaid, and the surveyors, not finding
the original stake or witness trees, treated the corner as a lost
corner, and assumed to set a stake and re-establish the corner
at a point half way between the section corners, and this new
stake or corner is known as the Melindy and Fitzpatrick
stake, and is located 288½ links west of the point where the

plaintiff claims that the government stake was located. These conflicting claims as to the location of the quarter-post cause the entire difficulty.

Some years before this resurvey the plaintiff made and recorded a plat of a part of his land lying in the southeast corner of lot 4 aforesaid, known as the Suring plat of the village of Suring, and made all his measurements from the point claimed by him to be the government quarter-post. In 1897, after the setting of the Melindy and Fitzpatrick stake, the defendants *Rollman* and *Johnson* and one Clara Krueger made and recorded a plat known as the Krueger plat of the village of Suring, which covered a part of the land lying in the southwest quarter of the southeast quarter of section 12, and commenced all measurements from the Melindy and Fitzpatrick stake. Thus the two plats are side by side and do not interfere with each other so far as the descriptions and maps on file in the register's office show, but as matter of fact as laid out on the ground the Krueger plat overlaps considerably the Suring plat. It is the strip of land thus overlapped by both plats as they were actually located on the ground which is in controversy here. The defendants School District No. 3, M. E. Church, and Jasperson respectively own parcels in the Krueger plat on the dividing line between that plat and the plaintiff's land, and have taken possession of the strip opposite their respective parcels up to the Melindy and Fitzpatrick line. As to the balance of the strip up to the north line of plaintiff's land, the plaintiff is in possession of a part of it and a part is vacant. A number of other persons owning lands in sections 12 and 13, which are bounded by the north and south center line of the sections and whose boundary line would be affected by a change in the location of the quarter-section corner aforesaid, were made defendants as having some interest in the controversy. Certain mortgagees of the Jasperson lot were also joined as defendants, but no defendant answered except the appellants.

The plaintiff's complaint set forth at length the foregoing facts, and the appellants *Rollman* and *Johnson* demurred thereto generally and on the ground that several causes of action had been improperly united. This demurrer having been overruled, the appellants answered on the merits denying that they made any claim to respondent's land or any part of it by plat or otherwise, and the action was tried by the court. The court found in effect that the original government survey placed the quarter-post in question at the point claimed by plaintiff, and that it was not a lost corner, hence that the Melindy and Fitzpatrick stake was erroneously located. From this premise it was found and adjudged that the plaintiff's ownership extended to a line passing through the original government corner northerly to the quarter-post on the north side of section 12, and that the Krueger plat, as well as the premises of the various defendants, does not extend west of that line as claimed, and that said plat and the various deeds in question be canceled so far as they cover land lying west of the quarter line so established. From this judgment the appeal is taken.

For the appellants there was a brief by *Martin, Martin & Martin,* and oral argument by *P. H. Martin.* They cited, among other cases, *Trustees of Kilbourn Lodge v. Kilbourn,* 74 Wis. 452; *Kruczinski v. Neuendorf,* 99 Wis. 264; *Johnson v. Swanke,* 128 Wis. 68; *Mitchell I. & L. Co. v. Flambeau L. Co.* 120 Wis. 545; *Toledo, St. L. & N. O. R. Co. v. St. L. & O. R. R. Co.* 208 Ill. 623; *Dolan v. Smith,* 147 Mich. 276, 110 N. W. 932; *Harvey v. Harvey,* 73 N. H. 106, 59 Atl. 621; *Gray v. Tyler,* 40 Wis. 579; *Kelley v. Kelley,* 80 Wis. 486; *Davenport v. Stephens,* 95 Wis. 456; *Broderick v. Cary,* 98 Wis. 419; *Fox v. Williams,* 92 Wis. 320; *Ill. S. Co. v. Schroeder,* 133 Wis. 561.

For the respondent there was a brief by *Eberlein & Eberlein,* and oral argument by *F. A. Eberlein.* As to plaintiff's right to maintain the action, they cited *Kruczinski v. Neuen-*

*dorf,* 99 Wis. 264; *Smith v. Zimmerman,* 85 Wis. 542; *Post v. Campbell,* 110 Wis. 378; *Swihart v. Harless,* 93 Wis. 211; *Spiess v. Neuberg,* 74 Wis. 279; *Prickett v. Muck,* 74 Wis. 199; *Burrows v. Rutledge,* 76 Wis. 22; *Gibson v. Gibson,* 102 Wis. 501. Upon the question of misjoinder: *Beatty v. Dixon,* 56 Cal. 619; *Moon v. McKnight,* 54 Wis. 551; *Whetstone v. Beloit S. B. Co.* 76 Wis. 613; *Ellis v. N. P. R. Co.* 77 Wis. 114; *Draper v. Brown,* 115 Wis. 361; *Level L. Co. v. Sivyer,* 112 Wis. 442; *Seering v. Black,* 140 Wis. 413; *Herman v. Felthousen,* 114 Wis. 423; *Adkins v. Loucks,* 107 Wis. 587; *Simon v. Weaver,* 143 Wis. 330. To the point that the original location of the quarter-post will prevail over a resurvey: *Knoll v. Randolph,* 3 Neb. (Unof.) 599, 92 N. W. 195; *Pereles v. Gross,* 126 Wis. 122, 105 N. W. 217; *Gilman v. Brown,* 115 Wis. 1; *Rowell v. Weinemann,* 119 Iowa, 256, 93 N. W. 279; *Clark v. Thornburg,* 66 Neb. 717, 92 N. W. 1056; *Baty v. Elrod,* 66 Neb. 735, 92 N. W. 1032; *Mills v. Penny,* 74 Iowa, 172, 37 N. W. 135; *Brew v. Nugent,* 136 Wis. 336, 117 N. W. 813; *Shrake v. Laflin,* 3 Neb. (Unof.) 489, 92 N. W. 184; *Lampe v. Kennedy,* 60 Wis. 110; and other authorities.

WINSLOW, C. J. Upon the disputed question of fact in this case we shall make no extended remarks. The circuit judge, with his accustomed care and industry, analyzed the evidence in a written opinion which is perfectly satisfactory to us upon this question. There was much evidence of early landmarks, blazed lines, and the existence of bearing trees now destroyed, which strongly supported the contention of the plaintiff as to the original location of the quarter-post in question, and we think we should have reached the same conclusion which he reached were we required to pass upon the controversy as a court of first instance.

The question of fact being settled, the only remaining questions arise out of the demurrer to the complaint which was

overruled before the answer upon the merits was interposed. That presented two questions: *first,* whether there was not a complete remedy at law; and, *second,* whether two causes of action had not been improperly joined.

It will be seen by the statement of facts that the appellants here are the only defendants who appeared in the case or answered. If, therefore, as to them a good cause of action in equity was stated, it necessarily follows that the demurrer was properly overruled so far as the first ground is concerned. The circuit judge held that there was a good cause of action stated under sec. 3186, Stats. (1898), *i. e.* a good statutory cause of action to remove a cloud from the title of real estate. We can see no good reason for doubting this conclusion. The statute referred to has considerably enlarged the equity powers of the court in this direction.

A written memorandum, unwitnessed, unacknowledged, and unrecorded, and which contained no description of land which could be located, was held by this court to be a cloud or claim which would support an action to remove it, when the defendant persisted in claiming that he was entitled to some interest in certain lands under it. Here it appears that the answering defendants put on record a plat of land, acknowledged and certified as the statute requires, and that said plat is actually located and staked out on the ground and covers the disputed strip of land; further, that the defendants have claimed and are still claiming title to the disputed strip and are selling parts of it to others. This seems a tolerably robust setting up of claim to land, quite sufficient under the decisions to justify an action under sec. 3186, when the plaintiff still remains in possession of the land claimed or when the land is vacant. *Fox v. Williams,* 92 Wis. 320, 66 N. W. 357; *Broderick v. Cary,* 98 Wis. 419, 74 N. W. 95.

As to the second objection, there might perhaps be some difficulty in holding as an original proposition that an equitable cause of action under sec. 3186 against one defendant

not in possession could be joined with a cause of action against another defendant in possession of a different parcel; but the question is whether any substantial right of the complaining party has been affected by the adverse ruling, even if erroneous when made. Sec. 3072m, Stats. (Laws of 1909, ch. 192). The appellants' substantial rights were simply to meet the plaintiff in a court of equity and submit their proofs on the questions of fact, as well as their arguments upon the legal questions involved, and have such proofs and arguments fairly considered and passed upon. These rights have been fully preserved to them. These were substantially the grounds upon which the trial court disposed of these objections when they were renewed upon the final argument of the case.

It seems to this court, however, that there is another and broader ground upon which the judgment may be affirmed, and that is that there was a good cause of action stated in equity independent of sec. 3186, Stats. (1898), and that all of the parties joined as defendants were proper parties thereto.

For the purposes of the case it may be admitted that a cloud upon title which will justify the bringing of an equitable action for its removal independent of the statute must be some apparent title or incumbrance rendering a resort to evidence *aliunde* the record necessary in order to show its invalidity. *Gamble v. Loop,* 14 Wis. 465; *Pier v. Fond du Lac,* 38 Wis. 470; *Broderick v. Cary,* 98 Wis. 419, 74 N. W. 95.

Does this plat, made and recorded by the defendants, constitute such a cloud? It is true that it purports only to cover land in the southeast quarter of section 12, while plaintiff's land is in the southwest quarter, and hence the argument is that the plat constitutes no cloud on the title to any land owned by the plaintiff. The question, however, is not to be so easily decided. The plat itself does not seem to have been

actually produced in evidence, but it is admitted that its measurements were commenced from the Melindy and Fitzpatrick corner as relocated. Thus it affirmatively appears that as actually located on the ground the plat encroached a number of rods over and upon the plaintiff's land. Our statute governing such plats and authorizing them to be recorded requires as a prerequisite that an accurate survey of the land covered thereby be made, and that the boundaries of all blocks, streets, and alleys, as well as the corners of every lot and block, the beginning and terminus of every street, and every angle of a street, be marked and established in the field by suitable monuments. It further requires that the boundaries of lots and blocks, with the length and courses of all exterior boundary lines, shall appear on the face of the map, and that the monuments shall be represented in their proper places on the map and the material of which they are made noted thereon, and, further, that a certificate of the surveyor, certifying among other things to the correctness of the map, shall appear thereon before the plat is entitled to record.

Presumably all these requirements were complied with on the making and recording of the Krueger plat. It is quite apparent that you cannot divorce the plat from the survey. Under very familiar principles the monuments erected or placed in the ground at the corners of the lots, blocks, and streets control courses and distances named on the plat and fix the location of the corners which they represent. So the plat and survey go hand in hand, and the effect of the plat as a claim of title extends on the west to the corners marked and established on the ground, and thus the plat itself, in connection with the survey and the Melindy and Fitzpatrick cornerpost, from which the survey starts, becomes a document on record, which seems apparently to entitle every purchaser of a lot upon the west side of the Krueger plat to assert title up to the line of the actual survey.

Now it is well settled in this state that the common-law action *quia timet* may be brought when the plaintiff is out of

possession and the defendant is in possession in a case where by fraud or other means producing like results the defendant has an apparent title, the invalidity of which can only be shown by evidence *aliunde* the record. In such case the remedy at law by ejectment or trespass is not deemed sufficient, because the plaintiff is entitled to have the apparent title canceled or surrendered, and, as incidental to this equitable relief, the same court will decree the giving up of possession of the premises by the wrongdoer. *Spiess v. Neuberg,* 71 Wis. 279, 37 N. W. 417; *Prickett v. Muck,* 74 Wis. 199, 42 N. W. 256; *Burrows v. Rutledge,* 76 Wis. 22, 44 N. W. 847; *Swihart v. Harless,* 93 Wis. 211, 67 N. W. 413; *Kruczinski v. Neuendorf,* 99 Wis. 264, 74 N. W. 974; *Post v. Campbell,* 110 Wis. 383, 85 N. W. 1032; *Boon v. Root,* 137 Wis. 451, 119 N. W. 121. This remedy is not confined to cases of fraud, but covers cases where, in order to give effectual relief, there must be the reformation, cancellation, or surrender of deeds, conveyances, or records affecting the title. *Allen v. Ellis,* 125 Wis. 565, 104 N. W. 739.

Now in the present case it seems quite apparent that the Krueger plat, in connection with the monuments on the ground, constitutes a standing and continuing claim by all who now own or may hereafter own lots on the west side thereof, that their lots extend to the Melindy and Fitzpatrick line. The plat as located on the ground now does and will always continue to include this disputed strip. The only real and effective relief must be that which the court gave, *i. e.* a cancellation of that part of the plat which actually has been located on the ground on the west side of the correct line. The plat is an entirety and can and ought to be attacked as a whole, and, if so attacked, all the parties interested in the result of the attack, though their claims be several, should be made parties. We have not been referred to any cases precisely similar to this, but it seems to fall within well recognized principles, and we are satisfied was rightly disposed of.

*By the Court.*—Judgment affirmed.