the final abstract disclosed the existence of two mortgages, dated June 1, 1929, and executed by the vendor on June 27, 1929, and recorded July 9, 1929, conveying the entire subdivision of 162 lots to the National Bank of Commerce as trustee, and each of which was to secure the payment of bonds aggregating $250,000, of which $50,000 were to mature on June of the years 1930, 1931, 1933, and 1934, respectively, and $300,000 on June 1, 1932.

Although the abstract indicated that the mortgages had provisions for partial releases, it did not disclose the details or character of such provisions, and the vendor failed to inform plaintiff on that subject until it submitted to plaintiff's attorneys, on July 30, 1929, a copy of one of the mortgages, which were said to be identical in form. In that mortgage the Armory Realty Company covenanted that it would not sell or contract to sell any of the real estate at a price or upon a basis less than a specified sale price, which for the lowest priced lots was at the rate of $60 per front foot; that it would, upon the sale of any part of the real estate, so long as any of the bonds were unpaid, deposit with the trustee, to be used in the manner described in the mortgages, forty-five per cent. of the gross sale price and also thirty per cent. of all sums received by the Armory Realty Company from any sale; that when the proceeds, so deposited upon the sale of any lot, equaled one hundred twenty per cent. of a specified release price, which for the lowest priced lots was at the rate of $35 per front foot, it would be entitled to have the trustee release such lot so long as it is not in default in the payment of any amount due for principal or interest on any bond, nor in respect to any of the covenants in the mortgage; and also that it would be entitled to the release of lots to be selected by it, if it deposited with the trustee funds derived otherwise than from the sale of property still covered by the lien of the mortgage, provided that such funds so deposited,

exclusive of funds derived from the sale of unreleased property, amount to one hundred twenty per cent. of the specified release price of the lots so selected.

Upon plaintiff's attorneys examining the copy of the mortgage, there was considerable discussion and a disagreement between plaintiff's and the vendor's officers and attorney as to how the lots sold to plaintiff could be legally released by the trustee from the trust mortgages so as to enable the vendor to perform his contracts with the plaintiff to convey to it, upon its payment of twenty-five per cent. of the purchase price, the purchased lots by warranty deed free from incumbrances, excepting liens and incumbrances created by the act or default of the purchaser. The vendor insisted, notwithstanding plaintiff's objections, that plaintiff should accept a deed subject to the trust mortgages, and thereby assume the payment of a *pro rata* portion of the mortgage indebtedness, with the right to obtain partial releases as the mortgages provided.

On August 2, 1929, the vendor's attorney submitted a proposed form for a deed, which, after expressly excepting the trust mortgages from the vendor's warranty of title, provided:

"That said trust mortgages are and constitute a lien and incumbrance on the lots heretofore described to the extent of $35 per front foot, totaling 2,728.38 feet, as appears in Exhibit 'A' of said trust mortgages, and which proportionate share of said trust mortgages to the extent of 2,728.38 feet at the rate of $35 per front foot the grantee herein assumes and agrees to pay as follows, to wit: On or before May 21, 1930, $31,831.10, and on or before November 21, 1930, $63,662.20. That said trust mortgages further provide that the trustee shall release from the lien of said mortgages any of the lot or lots heretofore described whenever payment on the principal of said trust mortgages has been made to the trustee at the rate of $35 per front foot of said lots, plus twenty per cent. of said amount of $35, making a total of $42 per front foot. The grantor agrees to secure from the trus-

tee, as provided by the terms and conditions of said trust mortgages, a release for any or all of said lots, when the grantee pays to the grantor the sum total herein specified, or any proportionate part thereof equivalent to the number of feet of any of the said lots multiplied by thirty-five (35)."

At a conference on August 6, 1929, plaintiff's attorneys informed the vendor's officers and attorney that the proposed form for a deed was not acceptable; that if the vendor would convey the premises to plaintiff by warranty deed free from incumbrances, as the land contracts provided, plaintiff was ready and willing to pay the initial twenty-five per cent. of the purchase price and give to the vendor a mortgage for the balance thereof, payable as the contracts provided.

Upon the vendor's persisting in its demand that the plaintiff assume a *pro rata* portion of the incumbrances existing by reason of trust mortgages, plaintiff's attorneys produced and delivered to the vendor, in relation to each land contract, a written notice, each of which, excepting as to the property described and the amount of the cash down payment, was as follows:

"This is to notify you that the Miswald-Wilde Co., 1349 Green Bay avenue, Milwaukee, Wisconsin, hereby rescinds its contract dated May 21, 1929, with the Armory Realty Company of Milwaukee, Wisconsin, for the purchase of the lots described in said contract, . . . for the reason that the Armory Realty Company has breached its said contract by making it impossible for itself to deliver to the purchasers in said contract a warranty deed conveying said premises free from incumbrances, as provided for in said contract, and for the further reason that the said Armory Realty Company is unable to, and has failed to, furnish an abstract of title showing merchantable title in said Armory Realty Company, and for the further reason that the Armory Realty Company has no title to a part of said premises, and that the same are subject to outstanding tax liens, and refuses to furnish to the Miswald-Wilde Co., upon the payment of twenty-five per cent. of the purchase price of said premises as provided in said contract, a warranty deed conveying said premises

free from incumbrances, except liens and incumbrances created by the act or default of the purchaser, his legal representative or assigns, restrictions placed or to be placed upon the said lots by the Armory Realty Company and easements of record given to public utility companies.

"And the Miswald-Wilde Co. hereby demands of the Armory Realty Company that it return to the Miswald-Wilde Co. the sum of four thousand nine hundred five dollars ($4,905), a cash down payment at the time contract was executed, with interest thereon at the rate of six per cent. per annum since the 21st day of May, 1929, and the further sum of fifty thousand dollars ($50,000) for its damages sustained because of the breach of said contract by the said Armory Realty Company."

Upon the vendor's failure to pay as demanded in that notice, plaintiff commenced this action to recover the cash down payments and its damages for the vendor's breach of its contracts.

So far as now material, it suffices to note that at the trial, upon the only issues submitted to the jury, it found that plaintiff did not refuse to accept releases from the trustee prior to August 2, 1929; and also found the amount of the fair market value of the lots described in the land contracts. Upon motions after verdict the court held that plaintiff had defaulted in paying the instalment payable within thirty days of May 21, 1929; that while plaintiff was in default, the vendor, on June 27, 1929, executed the trust mortgages; that on August 2, 1929, plaintiff refused to accept a release from the trustee; that the trust mortgages provided for releases by the trustee upon payments regardless of any sale or any price, and releases so given would release lots in question from the lien of the trust mortgages and not render the title doubtful; that although strict compliance with respect to payment was waived by the vendor, plaintiff was bound to pay or offer to pay before seeking relief for the vendor's alleged default; and that the vendor was entitled to the judgment which was entered dismissing the complaint, and from

which plaintiffs appealed. In connection with ordering that judgment the court also found and determined the damages that the plaintiffs would be entitled to, in the event plaintiffs are entitled to judgment herein, to be the sum of $65,677.13.

Not only were the times stated in the contracts for the payments of the instalments, aggregating the first twenty-five per cent. of the purchase price, not of the essence of the contracts, as stated above, but even if by apt provisions the contracts had made time of essence, the vendor waived its right in that regard by its voluntary acts and participation in the negotiations and transactions between the parties from June 18, 1929, when it delivered its first incomplete abstract of title, until plaintiff's notices and demands for damages were served upon the vendor on August 6, 1929. See *Godwin v. Miller,* 199 Wis. 497, 499, 226 N. W. 954; *Golos v. Worzalla,* 178 Wis. 414, 190 N. W. 114; *Buntrock v. Hoffman,* 178 Wis. 5, 189 N. W. 572; *Hermansen v. Slatter,* 176 Wis. 426, 187 N. W. 177; *Phillips v. Carver,* 99 Wis. 561, 75 N. W. 432. Consequently, plaintiff was not in default so as to defeat its right to insist on performance by the vendor on June 27, 1929, when the latter incumbered the lots by executing the trust mortgages. If by those incumbrances the vendor made it impossible for it to perform as required by the land contracts, then its refusal to convey to plaintiff otherwise than by a deed in which plaintiff was to assume a *pro rata* portion of those mortgage incumbrances constituted the first default and breach that occurred on the part of either party, and subjected the vendor to the legal consequences of such breaches.

At the outset it must be noted that the incumbrances placed on the property by the vendor were blanket mortgages covering all of the 162 lots, of which plaintiff was interested, by reason of its purchase, in only sixty-three lots. No release of any lot was authorized if the Armory Realty Company was in default in the payment of any amount due for prin-

cipal or interest on any bond or in respect to any covenant in the mortgages. As a consequence, even if either the plaintiff or the vendor paid to the trustee the required one hundred twenty per cent. of the specified release price of any lot sold to plaintiff, neither would have been entitled to the release of such lot if there then existed any default under the mortgages in any respect, either in relation to all or one or more of the 162 lots. Thus, for instance, there existed no right to the release of any lot, even upon payment of the prescribed one hundred twenty per cent. of the release price, if any default occurred in the payment of interest or principal on any bond secured by the mortgages; or if the vendor contracted to sell any of the 162 lots at a price or upon a basis less than the specified sales price, which was $60 per front foot for the lowest priced lots; or if upon the sale of any of the 162 lots the vendor failed to deposit with the trustee the prescribed forty-five per cent. of the gross sale price and thirty per cent. of all sums received by it from any sale.

Manifestly, compliance with those covenants, so as to avoid defaults upon the complete absence of which the right to the release of any lot was contingent, depended primarily upon the vendor's continued performance of burdensome obligations with which plaintiff was not chargeable, and which it could not reasonably be expected to assume in order to protect its rights to a relatively small fraction, in point of area or value, of the entire subdivision. Even the right to release of any lot, which was provided for in the mortgages, upon the deposit with the trustee of funds obtained otherwise than from the sale of such lot, to the extent of one hundred twenty per cent. of the prescribed release price, existed only so long as there was no default in any respect on the part of the mortgagor. In other words, in the event of any existing default on the part of the mortgagor, a party desiring the release of any lot would be obliged not only to deposit the one hundred twenty per cent. of the stipulated release price, but

also to fully perform any and all covenants as to which the mortgagor was in default.

In this connection it is of probably fatal significance that the very sales to plaintiff, of which, by reason of the omission to record the land contracts, the trustee and bondholders had no constructive knowledge, were at prices which were in violation of the covenant in the trust mortgages which prescribed the minimum sales price of $60 per front foot. Instead of selling for that price per foot, the average selling price for the entire frontage of 2,728 feet purchased by plaintiff, under both contracts for a total of $137,700, was $50.47 per foot. If, as the vendor contends, the aggregate selling price under the contract for the smaller number of lots averaged in excess of the $60 per front foot, and the property under the other contract was sold at $35 per front foot, and to that is added the vendor's estimate as to the expenses for improvements, then the sales price would still only be $48.50 per foot. Estimates as to the vendor's selling expenses, which were not in fact paid or assumed by the purchaser, and on account of which the vendor obtained or realized nothing in addition to the stipulated sale price, are no part thereof in computing the price at which the sale was made to the vendee.

On the other hand, under and by express provision in the only deed by which the vendor was willing to convey, the lots were to be subject to the incumbrances created by the vendor's execution of the trust mortgages to the extent of $35 per front foot for a total of 2,728.38 feet, and plaintiff was to agree and assume to pay on account of those incumbrances $95,493.30, of which $31,831.10 were to be paid on or before May 21, 1930, and $63,662.20 were to be paid on or before November 21, 1930. The vendor, in undertaking to state the account between plaintiff and the vendor by charging the plaintiff with the unpaid balance of the purchase price and interest thereon to July 20, 1929, and then

crediting plaintiff with the $95,493.30 as the *pro rata* portion of the trust-mortgage indebtedness which the vendor wanted plaintiff to assume, considered itself entitled to receive from plaintiff a balance of $18,074.41. However, assuming that there was no default whatsoever in any other respect by the vendor under the trust mortgages, plaintiff could not have procured the release of the sixty-three lots, which it purchased, by depositing with the trustee merely $35 per front foot, or for the 2,728.38 feet the total of $95,493.30, for which the vendor was willing to give plaintiff credit on the total purchase price. To enable plaintiff to procure such releases it would have been necessary to deposit one hundred twenty per cent. of $35 per front foot, or a total of $114,591.96. That total is $19,099.46 more than the credit of $95,493.30, which was all that the vendor was willing to allow plaintiff to retain out of the contract prices under the two land contracts; and likewise that sum of $19,099.46 exceeds by $1,025.05 the balance of $18,074.41, which the vendor considered itself entitled to receive from plaintiff under the account which it had stated and in which it had included interest to July 20, 1929. It is manifest that by accepting a deed subject on its face to even only the *pro rata* portion of the trust-mortgage incumbrances, if the vendor failed to deposit the twenty per cent. excess over the release price of $35 per front foot, which totaled would amount to $19,099.46, plaintiff, under the only conveyance which the vendor was willing to make, would have been obliged to advance that sum in order to obtain the release; and plaintiff's only recourse would be to endeavor to recover the amount so advanced from the vendor.

That burden, as well as all the other burdens mentioned above, which had to be performed to avoid any default under the trust mortgages interfering with the obtaining of a release of the lots purchased by plaintiff, was foreign to the obligations assumed by plaintiff under its land contracts.

Those contracts entitled plaintiff, upon payment of twenty-five per cent. of the purchase price, to a warranty deed conveying the lots to plaintiff free from incumbrances excepting liens and incumbrances created by its act or default; and upon paying to the vendor the remaining seventy-five per cent. of the purchase price within eighteen months it would have been entitled to hold the title free from even the vendor's purchase-money lien. As compared to the title in that desirable state, plaintiff, by accepting a conveyance subject to the trust mortgages, might have been compelled, in the event of default under the mortgages by the mortgagor in some respect that plaintiff could not discharge, to wait until the last bond matured, and was paid at the end of five years.

On behalf of the vendor it is contended that the trustee, without obtaining the consent of the bondholders, could, notwithstanding defaults in other covenants, waive such defaults and effectually release any lot upon the payment of one hundred twenty per cent. of the release price. We find no provision in the trust mortgages that vests any such authority in the trustee, and it is certainly very doubtful whether it could or would assume to waive such defaults and execute such partial releases until unequivocally authorized to do so. At all events, a purchaser who has a contract for an unincumbered merchantable title would not be obliged to accept a conveyance subject to any such doubt or cloud on the title. *Harrass v. Edwards,* 94 Wis. 459, 69 N. W. 69; *Zunker v. Kuehn,* 113 Wis. 421, 88 N. W. 605; *Suring v. Rollman,* 145 Wis. 490, 130 N. W. 485; *Stack v. Hickey,* 151 Wis. 347, 138 N. W. 1011; *Douglass v. Ransom,* 205 Wis. 439, 237 N. W. 260, 263.

The vendor's incumbrancing of the property by giving the trust mortgages disabled it from performing its contracts with plaintiff, and resulted in its refusal to convey to plaintiff by such a deed as plaintiff was entitled to under those contracts. Its conduct in those respects constituted an an-

ticipatory breach by the vendor at a time when, as stated above, plaintiff was not in default. Thereupon no further payment or tender of performance by plaintiff was necessary. *Kreutzer v. Lynch,* 122 Wis. 474, 100 N. W. 887; *Fergen v. Lyons,* 162 Wis. 131, 155 N. W. 935; *Russell v. Ives,* 172 Wis. 123, 178 N. W. 300; *Bitof v. Hoppe,* 186 Wis. 409, 415, 202 N. W. 699. Because of the vendor's anticipatory breach, plaintiff, not being in default but having lived up to its contract, had available the following remedies: It "could have maintained an action for damages against the party in default, or under the proper circumstances could sue in equity for affirmative relief of specific performance or for the negative relief of injunction, rescission, or cancellation;" or it "could have elected to treat such breach as a discharge and refuse to perform further, and use the breach as a defense. 5 Page, Contracts, p. 5338, § 3023." *Pierson v. Dorff,* 198 Wis. 43, 49, 223 N. W. 579.

The notices served by plaintiff's attorneys on the Armory Realty Company on August 6, 1929, when considered in their entirety, manifest on their face the intention on the part of the plaintiff to hold the vendor for damages because of its breach of the land contracts. The mere use of the word "rescind" in those notices does not warrant the conclusion that plaintiff intended merely to content itself with a technical rescission and mere restitution of its cash down payment, instead of holding the vendor liable for plaintiff's damages because of the vendor's wrongful termination of the contracts. *Kieckhefer Box Co. v. John Strange Paper Co.* 180 Wis. 367, 369, 189 N. W. 145, 193 N. W. 487, 196 N. W. 572. As this court said in *E. L. Husting Co. v. Coca Cola Co.* 205 Wis. 356, 237 N. W. 85, 91, 238 N. W. 626:

"The conclusion that plaintiff intended by this act to rescind is certainly entitled to no greater weight than the rest of its conduct subsequent to the attempted termination, and this is clearly and unequivocally contrary to any such conclusion."

It does not appear that the vendor ever construed that notice as a mere rescission, or that it acted thereon as a proposition for rescission. It never offered restitution and did not even see fit to specially plead the alleged rescission as should ordinarily be done to render it available as a defense. *Salchert v. Reinig,* 135 Wis. 194, 115 N. W. 132.

The clause in the contracts, that "the purchaser agrees to comply with reasonable restrictions to be placed on the above lots by the Armory Realty Company," does not render them void for uncertainty. In that clause the purchaser simply authorized the vendor to act by imposing reasonable restrictions on the lots. The vendor was to determine what such restrictions should be. That clause did not leave or reserve that subject for further negotiation or agreement between the vendor and the vendee, but vested the determination thereof solely in the vendor. Under those circumstances, such a provision does not render the contract void for uncertainty. 1 Page, Contracts, § 90. In *Kenner v. Edwards Realty & F. Co.* 204 Wis. 575, 236 N. W. 597, a contract for the sale and conveyance of land subject to a mortgage, which was to be placed thereon by the vendor to whom the contract left the determination of the manner and time of payment of the mortgage indebtedness and rate of interest thereon, was held not to defeat the contract because of indefiniteness. Neither are the contracts rendered uncertain by the use of the word "mortgages" in the clause that the "deed shall provide for conveyance subject to restrictions, incumbrances, liens, mortgages, and easements aforesaid." The word "aforesaid" in that clause confines the matters affecting title, to which the conveyance is to be subject, to such as were previously mentioned in the contracts. That limits the lien of any "mortgages" to the previously mentioned "liens or incumbrances created by act or default of the purchaser, his legal representatives or assigns." It does not admit of a construction that permits

subjecting the deed to "incumbrances, liens, mortgages" created by the vendor or any one else than the purchaser or its representatives or assigns. In so far as that clause is applicable to "mortgages" created by plaintiff in favor of others than the vendor, it affects neither the land contracts nor the rights or obligations of either of the parties thereunder. But if that word "mortgages" is construed to mean mortgages to be given by plaintiff to secure the unpaid seventy-five per cent. of the purchase price, then the amounts, times of payment, and rate of interest for the mortgage indebtedness are all specified in the land contracts with sufficient certainty. On the other hand, the absence of any provision as to a mortgage to be given by plaintiff for the balance of the purchase price would not render the contract indefinite or invalid. There is no legal necessity for such a mortgage, or for any provision on that subject in the contracts. Either with or without such a provision in the contracts, the vendor is entitled to a lien for the unpaid purchase money to be paid as provided in the land contracts, and if desired that lien could have been expressly recognized in the deed to plaintiff without any occasion for doubt or uncertainty.

It follows that the judgment must be reversed excepting as to the defendant National Bank of Commerce, and that the interpleaded plaintiffs are entitled to judgment for the recovery from the Armory Realty Company of the damages which plaintiff sustained by reason of the Armory Realty Company's breaches of its contracts with plaintiff, and which the trial court found and determined to be $65,677.13. For that amount with interest and costs the interpleaded plaintiffs are entitled to a lien on the land described in the land contracts, and such lien shall be prior to all liens and incumbrances created or filed after the filing of the *lis pendens* in this action. *McLennan v. Church,* 163 Wis. 411, 423, 158 N. W. 73. The judgment shall provide that unless the

Armory Realty Company satisfies such judgment within one year from the date of the service of notice thereof, the premises shall be sold to satisfy such lien and judgment. *Poole v. Tannis,* 137 Wis. 363, 118 N. W. 188, 864.

*By the Court.*—Judgment reversed excepting as to the National Bank of Commerce, and cause remanded with directions to enter judgment in favor of the interpleaded plaintiffs as stated in the opinion.

The following memorandum was filed October 11, 1932:

PER CURIAM.   The motion for a rehearing is granted in relation to the following proposition solely:

Does the vendee's lien, upon the vendor's breach of a land contract, extend to the vendee's damages for breach of contract including lost profits, or is such lien right limited to the purchase money which the vendee has paid and the interest thereon.

The following opinion was filed January 10, 1933:

FRITZ, J. (*on rehearing*).   Upon further consideration of the nature and extent of a vendee's lien, to which the interpleaded plaintiffs claim to be entitled by reason of the vendor's breach of the land contracts involved in this action, we have concluded that the security afforded by that equitable lien should be limited to the amounts paid to the vendor on account of the purchase price, with interest thereon.   In this action for equitable relief, that lien should not be extended to secure also the vendee's loss of probable gain or profit, which it sustained by reason of the vendor's breach. In that respect the opinion heretofore filed herein, as well as the rule to that effect in *McLennan v. Church,* 163 Wis. 411, 158 N. W. 73, is hereby modified.   In the *McLennan Case* no precedent was cited for extending the lien so as to

cover also the loss of the vendee's bargain, and notwithstanding the extended and thorough research, which is indicated by the excellent briefs which have been submitted on the reargument herein, no precedents to that effect have been cited with the possible exception of *Townsend v. Vanderwerker,* 160 U. S. 171, 16 Sup. Ct. 258, 40 Lawy. Ed. 383. In so far as it was held in that case that a vendee who had performed under a contract, which entitled him to a conveyance of a half interest in land, was entitled to have a lien thereon in his favor for half of the value of the land, it is true that the amount secured by that lien included the vendee's profits of the bargain, if half of the value of the land in fact exceeded the pecuniary value of the consideration with which the vendee parted in performance of the contract.

On the other hand, in *Holden v. Efficient Craftsman Corp.* 234 N. Y. 437, 138 N. E. 85, the question whether the lien extends to the loss of profits was directly involved, and although the court recognized, and said that "A vendee has a lien for payments made on account of the purchase price. To that extent, he has equitable rights or interests in the subject matter of the contract analogous to those of ownership," it was held that "the lien does not extend to the profits of the bargain." It may also be considered of significance that although the existence of the lien, as security for payments made on account of the purchase price, has been recognized in this and other jurisdictions (*Wickman v. Robinson,* 14 Wis. 493; *Taft v. Kessel,* 16 Wis. 291, 297; *Hamill v. Kuchler,* 203 Wis. 414, 232 N. W. 877, 881, 234 N. W. 879; *Elterman v. Hyman,* 192 N. Y. 113, 84 N. E. 937, 942; *Beacock v. Peoples Lumber Co.* 253 Mich. 403, 235 N. W. 200, 201; *Stewart v. Mann,* 85 Oreg. 68, 165 Pac. 590, 1169; *Sheehan v. McKinstry,* 105 Oreg. 473, 210 Pac. 167, 34 A. L. R. 1315; *Larson v. Metcalf,*

201 Iowa, 1208, 207 N. W. 382, 45 A. L. R. 344; *Richeimer v. Fishbein,* 107 N. J. Eq. 493, 153 Atl. 514; *Goldstein v. Ehrlick,* 96 N. J. Eq. 52, 124 Atl. 761; *Rose v. Watson,* 10 H. L. Cas. 672; *Whitbread & Co. Ltd. v. Watt,* [1902] 1 Ch. 835), it does not seem to have been extended to include the profits of the bargain, excepting in *McLennan v. Church, supra;* and possibly, *Townsend v. Vanderwerker, supra.*

The underlying principle on which the lien rests is one of natural justice or natural equity, and so, with due regard to and as "the clear result of the equitable principles" involved, this court said in *Wickman v. Robinson, supra,* that if the vendee "chooses to waive every right except the recovery of that which he has paid, he should be held to have a lien on the land for that amount." Under those principles, the vendee's lien in the case at bar must be limited to the payments, which were made on account of the two contracts, and the interest thereon; and the recovery of judgment for those amounts thus secured constitutes the extent of the equitable relief which can be awarded in this action. If, however, the plaintiffs do not choose to waive every other right excepting the recovery of the purchase money paid, with interest thereon, then the judgment may be for the recovery, as in an action at law, of the entire damages, which the vendee sustained by reason of the vendor's breaches of those contracts, and which the trial court has found amounted to $65,677.13.

Under all the circumstances, it is deemed proper that plaintiffs should have an opportunity upon the return of the record herein to the circuit court to elect whether to take judgment for the recovery of the entire damages sustained by the vendee, without any lien, or to waive every other right excepting the recovery of the payments as purchase money, with interest, and the vendee's lien to secure such

amounts. If they choose the latter form of relief, then it will be necessary for the trial court to determine what amounts have been paid on each contract, and the vendee's lien for the total amount paid under a contract will be on only the land which is described in that contract. Accordingly, the former mandate is vacated and the mandate is as follows:

*By the Court.*—Judgment reversed, and cause remanded for further proceedings and judgment in accordance with law and this opinion.